FRANCISCO LLUCH ET AL., demandantes y peticionarios, *v.* ESPAÑA SERVICE STATION ET AL., demandados y recurridos.

*Número:* CE-85-790      *Resuelto:* 30 de junio de 1986

---

730

*José R. Caquías,* abogado de los peticionarios; *Gladys E. Guemárez,* de *Álvaro R. Calderón, Jr.,* abogada del recurrido Arcadio Romero Zambrano; *Luis N. Blanco Matos, pro se.*

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

La demora y falta de diligencia en la tramitación de los asuntos a través de los tribunales ha sido y es motivo de gran preocupación para este Tribunal, pues atenta contra el principio rector que impera en todo nuestro ordenamiento procesal: que las controversias en los tribunales se solucionen de una manera justa, rápida y económica.([1]) Regla 1 de las

---

([1])Este problema ha generado numerosos esfuerzos para corregirlo y ha dado lugar a innumerables estudios. Véanse, entre otros, Consejo sobre la Reforma de la Justicia en Puerto Rico, *Informe del Comité sobre Normas y Objetivos para Acelerar el Trámite de Casos en el Tribunal de Primera Instancia,* diciembre de 1984; Comisión para el Estudio de los Tribunales, *Estudio sobre la demora en el movimiento de casos en el Tribunal Superior,* San Juan, 1980; *Vista Preliminar,* Informe del Secretariado de la Con-

de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, R. 1). Un cuidadoso examen de los autos originales de este caso refleja cómo, a pesar de las mejores intenciones, sin la cooperación y colaboración de todos los integrantes del drama judicial —las partes, los abogados y los jueces— no se puede resolver de manera efectiva el problema de la tardanza en la tramitación y solución de los casos que aqueja a nuestro sistema judicial.

La demanda en este caso se presentó el 2 de octubre de 1984; (²) inmediatamente el caso fue asignado al plan de aceleración de casos civiles implantado en el Centro Judicial de San Juan. (³) En menos de una semana todos los demandados fueron emplazados, sin embargo, dos meses más tarde

---

ferencia Judicial, San Juan, noviembre de 1979; *La Fianza*, Informe del Secretariado de la Conferencia Judicial, San Juan, noviembre de 1979; *Informe del Comité de Justicia Juvenil de la Conferencia Judicial*, San Juan, octubre de 1980; *Métodos alternos para la solución de disputas*, San Juan, octubre de 1980; *La Judicatura Puertorriqueña*, San Juan, 1981; *Nuevos enfoques en la administración judicial*, Secretariado de la Conferencia Judicial, San Juan, octubre de 1982; *El incapacitado mental en el proceso criminal*, San Juan, noviembre de 1983; *Tendencias recientes en torno a la garantía constitucional contra registros y allanamientos*, San Juan, febrero de 1984.

(²) El Sr. Francisco Lluch y su esposa, María Teresa Vega de Lluch, presentaron en el Tribunal Superior, Sala de San Juan, una demanda en que reclamaban daños y perjuicios alegadamente causados por el estallido de una estación de gasolina Texaco ubicada en la Ave. Fernández Juncos, a un edificio de su propiedad, donde éstos mantenían su hogar y un espacio comercial. La demanda se presentó contra la España Service Station, Texaco de Puerto Rico, Inc. (en adelante Texaco), su compañía de seguros, la American International Insurance Co. of Puerto Rico, Inc. (en adelante American), el Sr. Arcadio Romero Zambrana y la Corporación Insular de Seguros (en adelante Insular).

(³) De acuerdo con el *aviso* sobre este plan "[é]sto significa que . . . el tribunal tomará parte más activa en el procesamiento del caso, con el propósito de conseguir que su trámite se efectúe dentro de los términos fijados por el tribunal, conforme lo disponen las Reglas de Procedimiento Civil y las Reglas de Administración para el Tribunal de Primera Instancia".

sólo uno de ellos había contestado la demanda. (⁴) El 22 de enero de 1985 el Lic. Luis N. Blanco Matos, abogado de los demandantes, entregó el expediente del caso al hijo de los demandantes, el Sr. Francisco Lluch Vega. (⁵) La moción en que solicitaba al tribunal que aceptase su renuncia al caso fue presentada el 29 de enero. El 14 de febrero el tribunal emitió una orden para que dentro de diez (10) días el licenciado Blanco Matos informara la dirección de sus representados. El licenciado Blanco Matos nunca cumplió con esta orden. A pesar de que los demandantes tenían el expediente del caso, pasaron cuatro (4) meses antes de que su nueva representación legal compareciera ante el tribunal.

El 3 de junio de 1985 la nueva representación legal de la parte demandante presentó cuatro mociones para: (1) asumir la representación legal; (2) solicitar que se dejara sin efecto una sanción de ciento cincuenta dólares ($150) que se le había impuesto por no contestar un pliego de interrogatorios sometido por las codemandadas Texaco de Puerto Rico, Inc. (en adelante Texaco) y American International Insurance Co. (en adelante American) el 8 de mayo de 1985; (3) solicitar la sustitución del demandante Sr. Francisco Lluch por su sucesión (el demandante falleció el 4 de mayo de 1985), y (4) por último, solicitar que se le permitiera comenzar el descubrimiento de prueba. En la moción sobre descubrimiento de prueba los demandantes solicitaron además, que se les concediera cuarenticinco (45) días para comenzar el

---

(⁴)La representación legal de Texaco y American y la de Romero Zambrana e Insular solicitaron prórrogas para contestar, ambas basadas en escuetas aseveraciones sobre la necesidad de investigar y estudiar el asunto. Ambas fueron concedidas. American y Texaco contestaron el 6 de diciembre de 1984, mientras que Insular y Romero Zambrana lo hicieron el 24 de enero de 1985.

(⁵)En su comparecencia de 22 de enero de 1985 ante este Tribunal el licenciado Blanco Matos informa que el hijo de los demandantes, el Sr. Francisco Lluch Vega, a nombre suyo y de sus padres le solicitó la renuncia y que él le "entregó los expedientes y le explicó el status de cada asunto".

descubrimiento y que "se [les reservase] el derecho [a] utilizar otros mecanismos de descubrimiento a la luz de las contestaciones que [obtuvieran] de los interrogatorios que [sometieran]". Ocho (8) meses después de presentado, este caso estaba prácticamente comenzando.

Así las cosas, el 17 de junio de 1985 el tribunal emitió una orden que concedía las mociones para asumir la representación legal, sustituir parte y solicitar permiso para comenzar el descubrimiento. Con respecto al relevo de la sanción el tribunal ordenó a las codemandadas Texaco y American mostrar causa dentro del término de diez (10) días "por las cuales no [debiera] acceder a la solicitud de los demandantes". Las codemandadas no comparecieron a mostrar causa y el tribunal no resolvió esta moción.

El 29 de julio de 1985 la parte demandante envió el primer pliego de interrogatorios a los demandados. El primero de ellos en contestar, el 9 de agosto, fue el codemandado Arcadio Romero Zambrana. El 4 de septiembre, éste remitió a los demandantes, una serie de documentos relacionados con el interrogatorio. Antes de que las codemandadas Texaco y American contestaran su interrogatorio, y apenas seis (6) días después que la codemandada Corporación Insular de Seguros (en adelante Insular), sometiera su contestación, (6) el 15 de octubre de 1985, los demandantes remitieron un segundo pliego de interrogatorios al codemandado Romero Zambrana. A este segundo pliego de interrogatorios, el codeman-

_____

(6) Las codemandadas Texaco y American e Insular solicitaron prórroga alegando como justificación escuetamente que necesitaban el término para completar la investigación y así poder contestar adecuadamente el interrogatorio. En la moción de las codemandadas Texaco y American se aduce como razón adicional, que la representación de la codemandada Texaco le fue encomendada conjuntamente a los abogados que representan a las codemandadas Texaco y American y a los abogados que representan a Insular, y que esto ocasionaba más dilación porque era "necesario que los abogados [discutieran] entre sí quién [habría] de llevar la defensa del caso a nombre de Texaco Puerto Rico, Inc. y contestar los interrogatorios que le [habían] sido notificados".

dado Romero Zambrana se opuso alegando simplemente que la parte demandante lo había presentado fuera del término establecido por la Regla 23.4 y que no había justificado la tardanza ni solicitado permiso para hacer el descubrimiento en esta etapa. En la moción no hizo mención de que el tribunal, en su orden de 17 de junio de 1985, había autorizado a los demandados a utilizar el descubrimiento de prueba a la luz de las contestaciones que se le remitieran. El 30 de octubre de 1985, antes de que transcurrieran los diez (10) días que concede la Regla 8.4(a) de las de Procedimiento Civil de 1979([7]) (32 L.P.R.A. Ap. III, R. 8.4(a)), para oponerse a una moción, el tribunal emitió una orden que declaraba con lugar la solicitud del codemandado Romero Zambrana.

El 22 de octubre de 1985 el tribunal concedió permiso para presentar demanda enmendada, la cual fue presentada ese mismo día. Las codemandadas Texaco y American contestaron esta demanda el 31 de enero de 1986 y los codemandados Romero Zambrana e Insular el 20 de febrero de 1986.

---

([7])La Regla 8.4(a), 32 L.P.R.A. Ap. III, R. 8.4(a), dispone:

"La petición para que se expida una orden se hará mediante moción, la cual, a menos que se haga durante vista o juicio, se hará por escrito, haciendo constar con particularidad los fundamentos legales y argumentos en que se basa, y exponiendo el remedio u orden que se interesa. Deberá, además, venir acompañada de cualquier documento o afidávit que sea necesario para su resolución.

"Cualquier parte que se oponga a una moción deberá radicar su oposición fundamentada dentro de los diez (10) días siguientes a ser notificado de la moción. Dicha oposición deberá ser acompañada de cualquier documento o afidávit necesario para su resolución. Si no se radicase oposición dentro de dicho término de diez (10) días, la moción se entenderá sometida, a menos que antes de vencer dichos diez (10) días el opositor solicitase una prórroga de dicho término y el tribunal se la concediese.

"Toda moción se considerará sometida para resolución sin celebración de vista a menos que el tribunal motu proprio, o a solicitud de parte, resuelva a su discreción señalarla para vista. Esta regla no será aplicable a aquellas mociones que por disposición de ley y estas reglas requieran la celebración de una vista."

Luego de una serie de mociones y órdenes relacionadas con el interrogatorio sometido el 28 de enero de 1985 a los demandantes, exactamente nueve (9) meses después de haber sido sometido y casi cinco (5) meses después de haber comenzado la pugna sobre su contestación, el 28 de octubre de 1985, los demandantes informaron haberlos contestado y solicitaron la eliminación de la sanción económica de mil dólares ($1,000) que se les había impuesto. [8] En su orden de 30 de octubre de 1985 el tribunal redujo la sanción a doscientos dólares ($200), relevó al codemandado Romero Zambrana de tener que contestar el segundo pliego de interrogatorios que le sometieron los demandantes y no permitió la continuación del descubrimiento de prueba por parte de los demandantes en cuanto al codemandado Romero Zambrana. Es de esta orden que los demandantes recurren ante este Tribunal, mediante auto de *certiorari.* Con fecha 30 de diciembre de 1985 emitimos dos resoluciones para mostrar causa, una dirigida a la parte recurrida para que mostrara causa por la cual no debía eliminarse la sanción de doscientos dólares ($200) impuesta a los demandantes peticionarios y ordenar al codemandado Romero Zambrana que contestara el segundo pliego de interrogatorios sometido por los demandantes peticionarios, y otra que ordenaba al licenciado Blanco Matos a mostrar causa "por la cual no deb[ería] ser sancionado" a base de las Reglas de Procedimiento Civil de 1979, el Canon 20 de Ética Profesional, y a la luz de lo dispuesto en *In re Ávila, Jr.*, 109 D.P.R. 440, 450 (1980); *Matos* v. *Metropolitan Marble Corp.*, 104 D.P.R. 122, 125–126 (1975). Tanto el licenciado Blanco Matos como el codemandado recurrido Romero Zambrana han comparecido y estamos en posición de resolver al amparo de la Regla 50 de nuestro Reglamento.

---

[8] Orden de 9 de octubre de 1985.

I

*El descubrimiento de prueba y el término de sesenta (60) días para concluir lo establecido en la Regla 23.4 de las de Procedimiento Civil*

■ En el caso de autos se nos brinda la oportunidad de interpretar el alcance de la Regla 23.4 de las de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, R. 23.4), que establece el término de sesenta (60) días, contados a partir de "la contestación a la demanda, reconvención, demanda contra tercero y demanda contra coparte" para concluir las gestiones relacionadas con el descubrimiento de prueba. Esta regla es autóctona. Fue introducida a nuestro ordenamiento jurídico en 1974 mediante enmienda a la Regla 34 de las anteriores Reglas de Procedimiento Civil por la Ley Núm. 143 de 23 de julio de 1974. (⁹) La Exposición de Motivos de esta ley señaló como factores que contribuían al atraso y lentitud en los procedimientos judiciales, la irrestringida y tardía utilización de los mecanismos de descubrimiento de prueba. El propósito de la medida al establecer el término de sesenta (60) días para "iniciar y utilizar" los mecanismos de descubrimiento de prueba era "compeler a las partes y a sus abogados a actuar con mayor diligencia y rapidez, evitando así atrasos innece-

---

(⁹) La Regla 34.6 de las anteriores Reglas de Procedimiento Civil leía como sigue:

"Los mecanismos de descubrimiento de prueba establecidos y regulados en las Reglas 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, y 33 sólo podrán ser iniciados y utilizados por las partes dentro del término de sesenta (60) días computados desde la fecha de notificación de la contestación a la demanda, salvo que el tribunal discrecionalmente, a solicitud de parte, y por motivos justificados no atribuibles al descuido o indiferencia de la parte solicitante de la prórroga o su abogado, y bajo las condiciones que estimare justas, prorrogare dicho término.

"En reconvenciones, reclamaciones contra tercero, demandas contra coparte, el término se computará a partir de formularse contestación a las mismas. El tribunal, discrecionalmente y por motivos fundados, podrá acortar o prorrogar dicho término bajo las condiciones que estime justas y garanticen una pronta solución de las controversias."

sarios en el procedimiento, ya sean éstos intencionados o el resultado de descuido o indolencia". ([10]) La Regla 23.4 adoptada por el Tribunal Supremo fue enmendada en el 1979 y finalmente quedó aprobada con el siguiente lenguaje:

Las partes concluirán las gestiones relacionadas con el descubrimiento de prueba dentro del término de sesenta (60) días siguientes a la notificación de la contestación a la demanda, reconvención, demanda contra tercero y demanda contra coparte. El tribunal tendrá facultad para prorrogar o acortar dicho término según las circunstancias del caso lo ameriten y garanticen una pronta solución de la controversia.

---

([10]) Aproximadamente cuatro (4) años más tarde, en 1978, el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico (en adelante comité) expresó de forma "unánime y enfátic[a] . . . que este término no ha[bía] dado los resultados esperados y que crea[ba] confusiones y . . . controversias . . . [y que] ha habido ocasiones injustas en que *se ha limitado indebidamente* [*el*] *término . . . sin que se justificase*". (Énfasis suplido.) A. Picó, "Ponencia sobre el Informe del Comité de Procedimiento Civil, *Memorias de la Quinta Sesión Plenaria de la Conferencia Judicial del Tribunal Supremo de Puerto Rico*, 13, 14 y 15 de diciembre de 1978, pág. 99. Sobre los términos establecidos en las Reglas de Procedimiento Civil de 1979 en el *Informe del Comité sobre Normas y Objetivos, op. cit.*, pág. 99, se hizo la siguiente observación:

"[s]e han efectuado estudios, aunque limitados a ciertas áreas, sobre el efecto que los cambios introducidos han tenido en la aceleración o en la dilación en resolver los casos. Los resultados no son halagadores. La experiencia, además, parece inducirnos a confirmar que el efecto ha sido negativo. En lugar de contribuir a una más pronta disposición de los casos, la ampliación de los términos ha conllevado un mayor retraso."

A la luz de esta realidad empírica en el *Informe sometido por el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico según Revisado por el Secretariado de la Conferencia Judicial* (en adelante informe), se recomendó que en la propuesta Regla 23.4 se eliminase el término de sesenta (60) días y se reiterase específicamente el reconocimiento de la flexibilidad que tiene el tribunal para entender en los problemas que surgen en la etapa del descubrimiento de prueba. Sin embargo, a pesar de la experiencia señalada y de la recomendación del comité en el informe, en una nota al calce se hace la siguiente observación: "En el Informe de revisión del borrador de Reglas de Procedimiento Civil se sugiere [que] se mantenga el término de 60 días y se recomienda una redacción más clara de la Regla 34.6 vigente." *Informe sometido por el Comité sobre Procedimiento Civil de la Conferencia Judicial, op. cit.*, pág. 71.

█ En los comentarios que acompañan a esta regla se cita la Exposición de Motivos de la Ley Núm. 143, *supra,* y se expresa "que el término de sesenta (60) días es directriz para la conclusión del descubrimiento . . . [y que la] alusión que se hace al momento de la notificación de contestación a la demanda es punto de referencia para computar el término provisto y de *ningún modo impone otra limitación que no sea la prohibición de iniciar el descubrimiento una vez extinguido el término de sesenta (60) días".* (Énfasis suplido.) Aunque preservando el término de sesenta (60) días, la Regla 23.4 incorporó un lenguaje que reitera la filosofía que prevalece en nuestro ordenamiento procesal de otorgar gran discreción al tribunal para resolver los problemas que surjan en relación con las dilaciones y demoras innecesarias en los procedimientos. De acuerdo con la regla actual, el descubrimiento de prueba concluirá dentro del término de sesenta (60) días, pero el tribunal queda facultado para prorrogar o acortar este término *"según las circunstancias del caso lo ameriten y garanticen una pronta solución de la controversia",* sin ninguna otra restricción o calificación.

█ El tribunal puede variar el término establecido por la Regla 23.4 según lo requieran las circunstancias específicas de cada caso para garantizar que se cumpla con el objetivo fundamental de nuestro sistema procesal: lograr una solución justa, rápida y económica de la controversia. Regla 1 de las de Procedimiento Civil de 1979; *García Negrón* v. *Tribunal Superior,* 104 D.P.R. 727, 729 (1976).

█ Al ejercer su discreción de prolongar o acortar el término para realizar el descubrimiento de prueba, el tribunal deberá hacer un balance entre dos intereses de gran importancia para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema judicial: de una parte deberá garantizar la pronta solución de las controversias, y de otra, velar por que las partes tengan la oportunidad de llevar a cabo un amplio descubrimiento de forma tal que en la

vista en su fondo no surjan sorpresas. Al realizar esta delicada labor deberá tener presente que un amplio y liberal descubrimiento de prueba es "la médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de justicia" que tanto mina la fe del pueblo en el sistema judicial. *Ades* v. *Zalman*, 115 D.P.R. 514, 517 (1984); *Rivera Alejandro* v. *Algarín*, 112 D.P.R. 830 (1982); *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959); *Shell Co. (P.R.) Ltd.* v. *Tribl. de Distrito*, 73 D.P.R. 451, 461 (1952); J. A. Cuevas Segarra, *Práctica Procesal Puertorriqueña*, San Juan, Pubs. J.T.S., 1985, Vol. II, Cap. V. "[U]n sistema liberal de descubrimiento de pruebas antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio." *Sierra* v. *Tribunal Superior*, supra, pág. 560. Bien utilizado el descubrimiento de prueba acelera los procedimientos, propicia las transacciones y evita sorpresas indeseables en el juicio. *Hartman* v. *Tribunal Superior*, 98 D.P.R. 124, 135 (1969); *Sierra* v. *Tribunal Superior*, supra; *United States* v. *Continental Casualty Company*, 303 F.2d 91 (4to Cir. 1962); 8 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 2001 (1970).

El esquema general adoptado por las Reglas de Procedimiento Civil de 1979 fue dejar en las manos de los abogados el trámite del descubrimiento de prueba; así se fomenta una mayor flexibilidad y cooperación entre ellos en esta crucial etapa del procedimiento judicial.([11]) Esto no significa,

---

([11]) Siguiendo este mismo enfoque en la Regla 26 (32 L.P.R.A. Ap. III, R. 26) se dispuso que las partes podrán acordar que el procedimiento para cualquier método de descubrimiento puede ser modificado por acuerdo de las partes. Esta Regla "contempla la posibilidad de estipulaciones para todo tipo de descubrimiento y no sólo para las deposiciones" según la disponía la anterior Regla 26. Comentario a la Regla 26 de las Reglas de Procedimiento Civil de 1979.

sin embargo, que él tribunal tenga que cruzarse de brazos y esperar que una o ambas partes acudan a él para entonces intervenir y encauzar estos trámites. El hecho de que las reglas le hayan impuesto a los abogados de las partes mayor responsabilidad en relación con el uso de los mecanismos de descubrimiento de prueba no releva al tribunal de su deber de velar por que los procedimientos garanticen la solución justa, rápida y económica de los casos. Regla 1. La Regla 37.1 (32 L.P.R.A. Ap. III, R. 37.1), en armonía precisamente con esta filosofía procesal, establece que en el ejercicio de su discreción el tribunal podrá ordenar a los abogados de las partes que comparezcan a una conferencia en la cual podrá considerar: "(a) [l]a simplificación de las cuestiones litigiosas; (b) [l]a necesidad o conveniencia de enmendar las alegaciones; (c) [l]a posibilidad de obtener admisiones de hechos y de documentos en evitación de prueba innecesaria; (d) [l]a revelación de la identidad de los testigos que se espera utilizar en el juicio y la limitación del número de testigos peritos; . . . [y] (f) [c]ualesquiera otras medidas que puedan facilitar la más pronta terminación del pleito". ([12])

En el caso ante nuestra consideración la parte demandante, luego de obtener permiso del tribunal para comenzar

---

([12]) Este caso es un ejemplo más de los perjuicios que causa a todo el sistema judicial el que el juez no tome medidas de control en una etapa temprana de los procedimientos. En un caso como el de autos, donde existen controversias —de hecho y de derecho— complejas, grandes reclamaciones en daños, y varias partes, el tribunal, a instancias de una de las partes o motu proprio debe citar a una o varias conferencias conforme a la Regla 37.1 (32 L.P.R.A. Ap. III, R. 37.1), y tomar las medidas cautelares que sugiere esa regla. Las estipulaciones de hechos que se puedan hacer en esta etapa temprana, la confección de un calendario y programa para regir el descubrimiento de prueba, acuerdos sobre posibles enmiendas a las alegaciones y las demás providencias de la Regla 37.1 habrían evitado en gran medida los problemas procesales suscitados y el consiguiente retraso causado, además de simplificar los procedimientos posteriores. Hon. G. Arbona Lago, *El "status" sí está en "issue": La conferencia sobre el estado del caso en el Procedimiento Civil*, 1 Forum 28 (oct.-dic. 1985); *Informe del Comité sobre Normas y Objetivos*, op. cit., pág. 71 y ss.; *Nuevos Enfoques en la Administración Judicial*, op. cit., págs. 37–38, 53 y ss.

tardíamente el descubrimiento de prueba, sometió un primer pliego de interrogatorios a los demandados. El codemandado Romero Zambrana contestó el 9 de agosto y remitió a los demandantes una serie de documentos relacionados con el interrogatorio el 4 de septiembre. Antes de que las codemandadas Texaco y American contestaran su interrogatorio y apenas seis (6) días después que la codemandada Insular sometiera su contestación, los demandantes remitieron al codemandado Romero Zambrana un segundo pliego de interrogatorios. A este segundo pliego de interrogatorios el codemandado Romero Zambrana se opuso, adujo que la parte demandante lo había presentado fuera del término establecido por la Regla 23.4 y que no había justificado la tardanza ni solicitado permiso para hacer descubrimiento adicional en esta etapa. El tribunal acogió este planteamiento y eximió al codemandado Romero Zambrana de tener que contestar el segundo pliego de interrogatorios.

Como regla general, los tribunales no deben permitir el uso de los mecanismos procesales fuera de los términos establecidos en las Reglas de Procedimiento Civil de 1979. Tampoco deben conceder prórrogas a menos que éstas se presenten dentro del término establecido en las reglas, vengan acompañadas de una adecuada justificación, el tribunal determine que al concederla no se causará perjuicio a la otra parte o una indebida dilación a la pronta solución de la controversia y que su concesión sea necesaria para lograr la justa solución de la contienda judicial. También, de ordinario, este Tribunal no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. Somos conscientes de la difícil tarea que confron-

tan los tribunales de instancia para acelerar los procedimientos y descongestionar los calendarios, mientras se enfrentan a una carga cada vez mayor, al aumentar no sólo el número de las radicaciones, sino también la complejidad de los casos. Esta ingente labor requiere la colaboración de los abogados como oficiales del tribunal y actores principales en nuestro sistema de derecho adversativo, y el más decidido apoyo de este Tribunal. Sólo contando con este apoyo y cooperación podrán los jueces de instancia brindarle al pueblo un sistema de justicia en el cual puedan confiar para la pronta y justa solución de las controversias justiciables que se le presentan.

En el caso de autos, la parte demandante sometió al codemandado Romero Zambrana un segundo pliego de interrogatorios pasado el término concedido por el tribunal para el descubrimiento. El tribunal entendió que simplemente porque el interrogatorio se había sometido fuera de término, sin haberse solicitado prórroga ni justificado la tardanza, no se debía permitir. No tomó en consideración la posibilidad de que el interrogatorio pudiera ser secuela del descubrimiento iniciado dentro del término concedido por el tribunal. El plazo provisto en la Regla 23.4 o en cualquier orden que sobre el particular emita el tribunal, no aplica al descubrimiento que sea secuela de un requerimiento iniciado dentro de este término, a menos que el tribunal específicamente provea lo contrario. Exigir la presentación de una moción de prórroga para poder llevar a cabo cualquier descubrimiento pasado el término establecido por la Regla 23.4 o por una orden del tribunal, sólo contribuiría a incrementar el número de asuntos que los jueces de instancia vienen llamados a resolver, sin que en nada se contribuya a la solución justa, rápida y económica de las controversias. Además, esto contravendría el esquema de extrajudicialidad en la utilización de los mecanismos de descubrimiento provisto por las Reglas de Procedimiento Civil y la norma jurisprudencial que propugna el fomento de la más amplia y liberal utilización de estos mecanismos.

■ Cuando el descubrimiento que se trate de hacer emane del iniciado dentro del término establecido por la Regla 23.4 o de una orden del tribunal, corresponderá a la parte contra quien va dirigido demostrar que se perjudica, ya fuere por la sobreutilización o la mala utilización del descubrimiento, y solicitar la protección del tribunal al amparo de la Regla 23.2 (32 L.P.R.A. Ap. III, R. 23.2). Una vez recabada la intervención del tribunal para limitar el descubrimiento, el tribunal deberá, al decidir si limita o no el mismo, tomar en consideración si efectivamente se trata de descubrimiento nuevo, y no una secuela del inicial. De ser secuela del inicial deberá considerar si se trata de una sobreutilización o mala utilización del descubrimiento o si por el contrario, si el descubrimiento que se pretende llevar a cabo es realmente necesario para que no se frustre la justicia, y si el permitir este descubrimiento causaría una demora indebida en la solución de la controversia o perjuicio a alguna parte.

■ De otra parte, si se trata de un interrogatorio sometido fuera de término que no es secuela del descubrimiento de prueba iniciado en tiempo, le corresponde a la parte que interesa el nuevo descubrimiento solicitar permiso al tribunal y justificar tanto la razón por la cual no inició el mismo dentro del término establecido por las reglas o por orden del tribunal, como la razón para no haber solicitado la prórroga dentro de dicho término.[13] También deberá demostrar que el descubrimiento es necesario para poder presentar adecuadamente su caso y que no se causarán demoras innecesarias o perjuicios a alguna parte.

---

[13] Al amparo de la Regla 68.2, la extensión del término podrá solicitarse aun pasado el término, mediante moción que exponga de modo afirmativo y específico la razón justificativa para la tardanza y para que se conceda el descubrimiento. *Lugo* v. *Municipio de Bayamón,* 111 D.P.R. 679 (1981); *Banco Metropolitano* v. *Berríos,* 110 D.P.R. 721 (1981).

La única razón que nos lleva a intervenir en este caso y modificar la orden de la sala de instancia es que el tribunal se equivocó al interpretar el alcance del término establecido por la Regla 23.4; que el permitir el descubrimiento en nada perjudicaba a las otras partes o dilataba la tramitación del caso, y que nuestra intervención en esta etapa evitará que por esta equivocación no se permita un descubrimiento que podría ser vital para el adecuado esclarecimiento de la verdad.

En el caso de autos el codemandado Romero Zambrana tenía que demostrar que el segundo pliego de interrogatorios no era secuela del primero y que el permitirlo causaría demora o perjuicio a alguna parte. Como cuestión de hecho, cuando se denegó el descubrimiento de prueba, el tribunal acababa de aceptar una demanda enmendada y los otros codemandados aún no habían contestado el interrogatorio de los demandantes. Bajo estas circunstancias, ciertamente, en cuanto a las nuevas alegaciones en la demanda enmendada y las contestaciones que éstas generaron no había comenzado aún a correr el término para realizar el descubrimiento de prueba bajo la Regla 23.4 y en cuanto a un descubrimiento que fuese secuela del original tampoco se puede decir que estaba fuera de término.

## II

*Sanciones interlocutorias a las partes—Regla 44.2*

■ La Regla 44.2 de las de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III, R. 44.2) es también autóctona. Establece en su parte pertinente que el tribunal, en el ejercicio de su sana discreción, podrá imponer sanciones económicas "en cualquier etapa [del procedimiento] a una parte y a favor del Estado por conducta constitutiva *de demora, inacción, abandono, obstrucción o falta de diligencia, en perjuicio de la eficiente administración de la justicia*". (Énfasis suplido.) El propósito de esta regla es proveer al tribunal un instrumento

adicional para agilizar los procedimientos y de esta manera evitar la demora y congestión en los tribunales. A iniciativa propia éste puede imponer sanciones cuando la conducta de las partes vaya en perjuicio de la *eficiente administración de la justicia.* Véanse los comentarios que acompañan a la Regla 44.2; *Práctica Procesal Puertorriqueña, op. cit.,* Cap. VII, pág. 322; Secretariado de la Conferencia Judicial, *Nuevos enfoques en la administración judicial,* San Juan, octubre de 1982, pág. 126.

No merece otro calificativo que azarosa la trayectoria procesal que culmina con la orden de 30 de octubre de 1985, en que se impone a la parte demandante una sanción de doscientos ($200) dólares por no haber contestado un pliego de interrogatorios que le sometieran las codemandadas Texaco y American el 28 de enero de 1985. [14] El historial procesal

---

[14] Este interrogatorio se envió a los demandantes por conducto del licenciado Blanco Matos cuando éste ya había presentado su renuncia, pero antes de que el tribunal la hubiese aceptado. Los propios demandantes admiten que desconocen si el ya fenecido demandante Francisco Lluch obtuvo estos documentos. Sobre este particular en la moción de 3 de junio de 1985 titulada "Moción Solicitando se Deje Sin Efecto Sanción" los demandantes informaron lo siguiente al tribunal: "Desconocemos si el Lcdo. Luis N. Blanco Matos informó al codemandante Francisco Lluch de esos interrogatorios y ya no lo podemos comprobar."

El 25 de febrero de 1985 las codemandadas Texaco y American solicitaron que se ordenara a los demandantes contestar el interrogatorio "bajo apercibimiento de sanciones". El 4 de marzo el tribunal le concedió veinte (20) días a los demandantes para contestar el interrogatorio y los apercibió que la falta de cumplimiento llevaría consigo la aplicación de una sanción. El 12 de abril las codemandadas nuevamente se vieron obligadas a recurrir al tribunal, esta vez para solicitar que se desestimase la demanda por no haberse contestado el interrogatorio. El 8 de mayo el tribunal dictó una orden que le imponía una sanción de ciento cincuenta dólares ($150) al amparo de la Regla 44.2, por no haber contestado el interrogatorio. Todas estas órdenes y mociones se notificaron al licenciado Blanco Matos, quien aún era abogado de récord, a la dirección que constaba en el expediente.

Así las cosas, cuatro meses después de que se entregara el expediente del caso al Sr. Francisco Lluch Vega, el 11 de junio de 1985, compareció la nueva representación legal de los demandantes. Presentó varias mociones, entre ellas, una para solicitar la sustitución de la sucesión del Sr. Francisco Lluch y otra para que se dejase sin efecto la sanción. En el cuerpo de esta

de los incidentes relacionados con este interrogatorio son un vivo ejemplo de lo que no debe de ocurrir en un caso.

■ Una vez el tribunal concedió, al amparo de la Regla 22.1 (32 L.P.R.A. Ap. III, R. 22.1), la sustitución del codemandante Francisco Lluch por su sucesión, ésta advino a ocupar la misma posición con relación a la causa de acción que el codemandante sustituido. Procesalmente era su obligación contestar el interrogatorio que se le había sometido originalmente a la parte sustituida. Cuevas Segarra, *op. cit.*, Cap. IV, pág. 119. De ordinario no intervendremos con el ejercicio de discreción de los tribunales de instancia al imponer sanciones por incumplimiento a sus órdenes. Sin embargo, en este caso

---

última moción indicaron que la codemandada Vega de Lluch, debido a su condición emocional producida por la muerte de su esposo no podía contestar el interrogatorio, pero que "[l]a sucesión del codemandante Lluch est[aba] en disposición de intentar contestar[los] . . . hasta donde ello les [fuera] posible". En la súplica de esta moción no solicitaron específicamente que se relevara a la codemandante Vega de Lluch de tener que contestar el interrogatorio. (Esta forma de solicitar remedios contribuyó a confundir al tribunal y dilatar el caso.) En relación con esta moción el tribunal dictó la siguiente orden: "Se conceden 10 días a la parte concernida para mostrar causas por las cuales no debemos acceder a [la] solicitud de los demandantes." Ello incluía el relevo de la señora Vega de Lluch de contestar el interrogatorio. Las codemandadas no mostraron causa. La parte demandante, por su parte, entró en negociaciones con los codemandados mediante las cuales acordaron que las demandantes no contestarían el interrogatorio.

Así las cosas, no es hasta prácticamente cuatro (4) meses más tarde que vuelve a resurgir el problema, cuando las codemandadas Texaco y American presentan una segunda moción de desestimación en la cual no hicieron mención de la orden para mostrar causa. Sin que hubiesen transcurrido aún los diez (10) días que concede la Regla 8.4(a) para que los demandantes se opusieran, el tribunal dictó una orden que les imponía una sanción de mil dólares ($1.000), concedía un término de diez (10) días para contestar y apercibía a los demandantes que de no cumplir se eliminarían las alegaciones y desestimaría la demanda. Ese mismo día los demandantes presentaron una oposición a la segunda moción de desestimación. Finalmente, el 28 de octubre de 1985, exactamente nueve (9) meses después de haber sido enviados, la codemandante Vega de Lluch contestó el interrogatorio y el 30 de octubre el tribunal rebajó la sanción a doscientos dólares ($200).

en particular, por razón de la forma confusa([15]) en que procesalmente se desarrolló todo el incidente relacionado con el interrogatorio y su falta de contestación resolvemos que la sanción de doscientos dólares ($200) no debe prevalecer.

■ No obstante, instamos a los tribunales de instancia a que, en aquellos casos apropiados, utilicen efectiva y vigorosamente todos los remedios provistos en nuestro ordenamiento procesal para agilizar los trámites judiciales. Véase *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982). Nuestras reglas contienen una rica gama de recursos encaminados a hacer efectivo su principio rector de resolver las controversias de forma justa, rápida y económica. Este Tribunal estará alerta y vigilante para hacer cumplir esta vital norma, eje central del debido proceso de ley.

### III

*Renuncia de representación profesional*

El Canon 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 20, dispone que "[c]uando [un] abogado haya comparecido ante un tribunal en representación de un cliente *no puede ni debe renunciar la representación profesional de su cliente sin obtener primero permiso del tribunal*". (Énfasis suplido.) La Regla 12.3 de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-A, R. 12.3, a su vez requiere que el abogado al presentar una moción para que se le acepte la renuncia de representación profesional incluya en

---

([15])La confusión la causaron las actuaciones tanto de las partes como del tribunal. Las partes al presentar varias mociones relacionadas con este asunto en las cuales en la súplica no solicitaban remedios específicos, sino que se limitaban a pedir que se declarase con lugar la moción o que se resolviese lo que el tribunal estimase pertinente, tomando en consideración lo expuesto en la moción. El tribunal, por su parte, contribuyó a la confusión al resolver estas mociones escuetamente a base de la súplica.

la moción *"la última dirección residencial y postal, incluyendo teléfono de tenerlo, de su representado"*. A tenor con dicha regla una vez resuelta la moción de renuncia profesional el Secretario notificará la resolución a las direcciones que el abogado suministró.

■ Un abogado que asume la representación legal de una persona y comparece ante un tribunal para reclamar o defender algún derecho de su cliente, no puede ni debe renunciar a esta responsabilidad sin antes obtener permiso del tribunal. En el ejercicio de su gestión profesional debe en todo momento, y hasta que sea formalmente relevado de su responsabilidad por el tribunal, desplegar el más alto grado de competencia y diligencia posible. *In re Siverio Orta*, 117 D.P.R. 14 (1986); *Matos* v. *Metropolitan Marble Corp.*, supra.

■ Recientemente recalcamos que la responsabilidad dual del abogado, para con su cliente y para con los tribunales, genera deberes que trascienden una relación puramente privada entre el abogado y el cliente. En *In re Siverio Orta*, supra, págs. 18–19, dijimos:

> La función de los abogados como uno de los componentes esenciales del sistema adversativo de impartir justicia, como oficiales del tribunal, está revestida de gran interés público y genera obligaciones y responsabilidades duales para con su cliente y para con el tribunal en la administración de la justicia. Esto les impone el deber de asegurarse que sus actuaciones en todos los casos en que intervienen estén encaminadas a lograr que las controversias se resuelvan de una manera justa, rápida y económica. Regla 1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 1. Para el adecuado funcionamiento del Sistema Judicial es indispensable que los abogados cumplan fiel y cabalmente con estas obligaciones. Recientemente expresamos: "La misión de los abogados en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de justicia. En ellos confían, no sólo las partes interesadas en los pleitos, sino las cortes

mismas." *In re Boscio Monllor,* 116 D.P.R. 692, 698 (1985);
*In re Díaz,* 16 D.P.R. 82, 92 (1910).

▄▄▄ La conducta del licenciado Blanco Matos al no
cumplir con la Regla 12.3 de las Reglas para la Administra-
ción del Tribunal de Primera Instancia y con la orden del tri-
bunal que específicamente le requería informar la dirección
de su cliente([16]) faltó a su deber, tanto para con su cliente
como para con el tribunal. El que esta información constara
en el expediente del tribunal como parte de las alegaciones de
la demanda no lo relevaba de este deber. ([17]) Los abogados
tienen el ineludible deber de contestar y atender con diligencia
todas las órdenes de un tribunal, hasta tanto éstas no sean
debidamente modificadas o dejadas sin efecto. El hecho de que
hubiera entregado el expediente del caso a su cliente y que
éste le informara que no deseaba que continuara represen-
tándolo, tampoco justificaba el desatender las órdenes expre-
sas del tribunal. Hasta que no se aceptara su renuncia, su
responsabilidad para con su cliente y el tribunal persistía.

▄▄▄ Tomando en consideración las circunstancias antes
reseñadas y el hecho de que su proceder no se debió a incom-
petencia o desidia, sólo amonestamos al licenciado Blanco
Matos y le advertimos que en el futuro este Tribunal no tole-
rará este tipo de conducta. Nos preocupa que en su gestión pro-
fesional ante los tribunales los abogados no cobren plena

---

([16]) Orden de 14 de febrero de 1985:

"Informe dirección de su representado en los próximos 10 días y se
proveerá."

([17]) En su comparecencia ante este Tribunal el licenciado Blanco Matos
adujo como excusa que esta información aparecía en las primeras dos ale-
gaciones de la demanda:

"1. Los demandantes son dueños en pleno dominio de un edificio de tres
plantas localizado en el número 1259 de la Avenida Fernández Juncos en
Santurce, Puerto Rico.

"2. En dicho edificio los demandantes mantienen su hogar y un espa-
cio comercial."

consciencia del deber y la obligación que tienen de ayudar a los magistrados en la ingente labor de resolver los casos con diligencia. Los abogados deben demostrar mayor interés en la pronta solución de las controversias y desplegar la máxima diligencia en todas sus gestiones. ([18]) También les corresponde poner al tribunal en posición de decidir y traer a su atención todos los hechos y elementos necesarios para que éste pueda llevar a cabo su función de adjudicar. Este deber es indelegable; su inobservancia afecta tanto al cliente como al sistema de administración de la justicia.

Por las razones antes expuestas, *se dictará sentencia en la que se expide el auto de certiorari, se revoca la orden de 30 de octubre de 1985, y se devuelve el caso para que continúen los procedimientos de forma compatible con esta opinión.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton no intervinieron.

---

([18]) Para una crítica sobre este tema véase R. J. Torres Torres, *Como la Mujer del César,* 2 Forum 24 (enero–marzo 1986).