Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (OAJP-2021-086)

| AMERICAS LEADING FINANCE, LLC<br><br>Demandante Peticionaria<br><br>v.<br><br>QBE SEGUROS DE PUERTO RICO Y OTROS<br><br>Demandados Recurridos | KLCE202400718<br><br>Consolidado con<br><br>KLAN202400658 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2018CV08332<br><br>Sobre: Incumplimiento Aseguradoras Huracanes Irma/María |
| AMERICAS LEADING FINANCE, LLC<br><br>Demandante Apelante<br><br>v.<br><br>QBE SEGUROS DE PUERTO RICO Y OTROS<br><br>Demandados Apelados | | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2018CV08332<br><br>Sobre: Incumplimiento Aseguradoras Huracanes Irma/María |

Panel especial integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Candelaria Rosa, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2024.

Comparece Americas Leading Finance, LLC. (ALF o apelante) mediante los recursos de epígrafe y nos solicita que revisemos la *Sentencia Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan el 10 de junio de 2024. En este dictamen, el foro primario dispuso sumariamente del pleito al desestimar con perjuicio la demanda presentada por la apelante. De igual manera, y mediante solicitud de consolidación de recursos, solicita la revisión de

la *Resolución* del 30 de mayo de 2024 en la cual se declaró con lugar un memorando de costas presentado por QBE Seguros de Puerto Rico y QBE Óptima Insurance (en conjunto, Óptima o apelada). Por los argumentos expuestos a continuación, adelantamos la confirmación de la sentencia apelada, así como la denegación del auto de *certiorari* solicitado.

Según surge del expediente, ALF presentó demanda sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios luego de que la recurrida le denegara cubierta bajo la póliza de seguro núm. 55-CP-O000059250-0. En esta, ALF alegó que se dedica a la adquisición de préstamos de vehículos usados y la administración de estos. Argumentó que a raíz de los huracanes Irma y María se vio obligado a cesar sus operaciones y posterior a ello utilizar oficinas alternas, por lo cual Óptima tenía la obligación de resarcir su pérdida de ingresos y gastos operacionales extraordinarios incurridos debido al alquiler de otras instalaciones. Por tal motivo, reclamó $2,068,208.00 más costas, gastos y honorarios de abogados. En respuesta, la recurrida sostuvo que la denegatoria de la reclamación fue correcta debido a que los daños reclamados no estaban cubiertos por la póliza, toda vez que las pérdidas y daños alegados respondieron a una disminución en la adquisición de créditos por parte de ALF como resultado del colapso del mercado al no generarse ventas de automóviles.

Luego de varios trámites procesales, el foro primario denegó una moción de sentencia sumaria presentada por la apelante el 19 de enero de 2022. En su *Resolución* expresó que del expediente surgían controversias de hechos que impedían la disposición sumaria del pleito. En específico, señaló que, aunque ALF alegó haber solicitado cobertura

bajo un endoso a la póliza de seguro titulado Endoso CP 15 45 10 12 o "Utility Services-Time Element", en cual incluía protección ante falta de energía eléctrica y comunicaciones, de la prueba documental no se desprendía dicha solicitud extrajudicial ni la activación de la protección alegada. Esto último, porque según el foro primario, la deposición del Sr. José Correa, quien fungía como "Chief Informations Officer", es insuficiente y adolece de valor probatorio para determinar que la póliza cubría el daño reclamado. Por tanto, hay controversia sobre la existencia de daños específicos.

Posteriormente, y luego de un descubrimiento de prueba adicional autorizado por el foro primario, ALF presentó otra solicitud de sentencia sumaria. En síntesis, arguyó la parte que procedía que se dictara sentencia sumaria a su favor puesto que no existía controversia de que sus reclamaciones siempre fueron basadas en la interrupción de su negocio y gastos extraordinarios, como consecuencia de la interrupción de energía eléctrica y comunicaciones a raíz de los daños sufridos a la propiedad y/o equipo que ayudaba suplir dichos servicios. Añadió que como logró demostrar la precitada ausencia de energía y comunicaciones, logró evidenciar la activación de la cobertura de la póliza.

Por su parte, Óptima presentó su propia solicitud de sentencia sumaria en la cual argumentó que, contrario a los argumentos de ALF, no bastaban con demostrar la falta de energía eléctrica y de comunicaciones según estipulado en el endoso, pues el endoso solo ampliaba la póliza, mas no liberaba a ALF de demostrar daños específicos de su pérdida de ingresos y gastos extraordinarios. Adujo que la causa de la alegada pérdida de ingresos fue, más allá de la falta

de luz y comunicaciones, la interrupción de la operación de concesionarios que originaban los préstamos pues aún si ALF hubiera contado con los servicios, como quiera hubiera estado impedido de operar su negocio como de costumbre. Por tanto, entiende Óptima que la apelante debió demostrar que los concesionarios estaban abiertos para que así se pudiera activar la cobertura, sin embargo, la prueba presentada demostró lo contrario.

Atendidas ambas mociones, el foro primario dictó sentencia en la cual declaró *Ha Lugar* la moción de sentencia sumaria presentada por Óptima y a su vez declaró *No Ha Lugar* la moción de sentencia sumaria presentada por ALF, y en consecuencia desestimó con perjuicio la demanda. El foro decretó que ALF no pudo demostrar que se haya activado la protección de la cobertura ni el endoso debido a que erróneamente alegó que lo determinante para la activación de la póliza era evidenciar la destrucción de la red de distribución de servicio eléctrico. Entendió el Tribunal que ALF debía demostrar con prueba admisible que, en efecto, los daños a las estructuras que suplían energía eléctrica y comunicaciones era la *razón principal* de la interrupción de sus operaciones, lo cual no surgió de la prueba presentada. Lo anterior, debido a que independientemente de que tuviera o no servicio de energía eléctrica, ALF no hubiera podido operar debido a que los concesionarios de autos no estaban generando préstamos ante el colapso del mercado. Por tanto, entendió el foro que ALF tenía la obligación de evidenciar que los concesionarios si estaban operando, y que contrario a los argumentos de la apelante, esta obligación no tiene el efecto de transferir indebidamente el peso de la prueba de Óptima a

ALF pues en nuestro ordenamiento el peso de la prueba recae sobre quien reclama tener un derecho a ser resarcido.

Emitido el dictamen, el Tribunal de Primera Instancia además hizo una determinación de temeridad y ordenó a ALF el pago de $10,000.00 en honorarios de abogados. El foro primario razonó que la parte prolongó el pleito innecesariamente debido a que en el 2022 ya se había determinado que ALF no había presentado prueba que demostrara que había solicitado extrajudicialmente la cobertura provista por el endoso; y que igualmente, hubo una determinación de que ALF no contaba con prueba que evidenciaría los daños específicos que dieran paso a la activación de la cobertura. Enfatizó que, aun con el paso de seis años de litigio, la apelante nunca logró demostrar con prueba admisible: que la falta de servicios de comunicaciones y servicio eléctrico en las facilidades de ALF fue lo que provocó la pérdida de ingresos y daños; que los concesionarios de autos estaban abiertos y generaron préstamos para el periodo reclamado.

Posterior a ello, la recurrida presentó oportunamente su memorando de costas que totalizaban $156,287.69. En su *Resolución,* el Tribunal de Primera Instancia autorizó los gastos por concepto de costas de: sellos de rentas internas ($90.00), sellos de asistencia legal ($27.00), diligenciamiento de citaciones ($300.00), transcripciones de deposiciones ($9,744.80), y honorarios de peritos. No obstante, redujo la cantidad de estos últimos, de la cuantía solicitada de $138,996.09 a $3,500 por entender que dicha cantidad era exorbitante. Para fundamentar su decisión, el foro primario además determinó que la prueba pericial no fue considerada en las solicitudes de sentencias sumarias ni fue determinante para la adjudicación del pleito toda vez

que la prueba pericial tuvo el propósito de refutar la prueba de ALF, estrategia que resultó fútil ya que la desestimación de la demanda se debió a que ALF no presentó prueba que demostrara que la alegada pérdida estuviera cubierta por la póliza.

Inconforme con las determinaciones del foro, recurre ante nos ALF y arguye que erró el Tribunal de Primera Instancia al desestimar su demanda pues entiende que logró probar exitosamente la activación de la póliza. En cuanto al memorando de costas, ALF plantea que las partidas otorgadas son improcedentes por ser exageradas y contrarias a derecho. Entiende la recurrida que el foro primario abusó de su discreción al otorgar las cuantías de las transcripciones pues fue contrario a la norma de no aprobarse gastos superfluos o extravagantes, especialmente cuando no todas las transcripciones fueron utilizadas para emitir el dictamen del foro. Con relación a los honorarios de peritos, también entiende la apelante que son improcedentes debido a que, según la Regla 23 (c)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 23(c)(1), la parte que solicita dicho descubrimiento es la responsable de cubrir los honorarios. Añadió que Óptima falló en demostrar en su memorando como la prueba pericial adelantó su teoría del caso. Finalmente, sostiene que la jurisprudencia solo reconoce el reembolso de los sellos de rentas internas —mas no de asistencia legal—, y los gastos de diligenciamiento de las partes, no de terceros, y que aun si fuesen procedentes, la recurrida no pudo evidenciar como la citación de terceros logró asistir en el caso cuando se citaron terceros que luego no testificaron. Por su parte Óptima presentó su posición mediante "Alegato en Oposición a Recurso de Apelación".

En lo atinente al auto de *certiorari*, es sabido que es el vehículo procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos de conformidad a los criterios dispuestos por la Regla 40 del Reglamento de este Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. En tal sentido, la función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *Zorniak v. Cessna*, 132 DPR 170 (1992); *Lluch v. España Service Sta.*, 117 DPR 729 (1986).

Por otra parte, al mecanismo de sentencia sumaria, nuestro ordenamiento jurídico contempla que cualquiera de las partes pueda solicitar que se disponga sumariamente la totalidad o cualquier parte de una reclamación. Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36; *Torres Pagán et al. v. Mun. de Ponce*, 191 DPR 583, 597 (2014). La Regla 36, *supra*, exige que el peticionario de un dictamen sumario establezca su derecho con claridad y demuestre que no existe controversia sustancial sobre algún hecho material; es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414 (2013). Para ello, la parte promovente viene obligada a desglosar los hechos relevantes sobre los cuales aduce que no existe controversia sustancial, en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. *Id*.; Regla 36.3(a)(4), *supra*.

Asimismo, la Regla 36, *supra*, regula la oposición a que se dicte sentencia sumaria, la cual debe citar específicamente los párrafos enumerados que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Id*., inciso 3(b)(2). Como se puede apreciar, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al*., 199 DPR 664 (2018). En la medida en que meras afirmaciones no bastan para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados. *Id*.; *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Ahora bien, en lo que respecta al estándar de revisión aplicable, este Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de Procedimiento Civil, *supra*.

Es sabido que en nuestro ordenamiento jurídico la industria de seguros goza de un alto interés público debido al papel que ocupa en la protección de la vida y el patrimonio. *Serrano Picón v. Multinational Life Insurance Company*, 212 DPR 981 (2023); *WMM, PFM et al v. Colegio et al*, 211 DPR 871 (2023). El Código de Seguros de Puerto Rico, el cual regula la industria, establece que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o

solicitud adherido a la póliza y que forme parte de ésta". 26 LPRA sec. 1125. Asimismo, el Tribunal Supremo ha expresado que "los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". *Barreto Nieves v. East Coast Water Sports, LLC*., 2024 TSPR 40, 214 DPR __ (2024) (citando a *Echandi Otero v. Stewart Title*, 174 DPR 335, 369 (2008).

Ahora bien, "al evaluar el alcance de la protección brindada por una póliza, es igualmente necesario examinar si existen cláusulas de exclusión en el contrato mediante las cuales la aseguradora exceptúa determinados eventos, riesgos o peligros de la cubierta". *Rivera Matos v. ELA*, 204 DPR 1010, 1022 (2020) (citando a *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271 (2015); *Natal Cruz v. Santiago Negrón et al, 184 DPR 564, 575 (2013). No obstante,* "[p]rimeramente, corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión". *Rivera Matos v. ELA*, *Id.* en 1020.

Por último, en cuanto a la procedencia de los honorarios de abogado, su imposición "sólo procede cuando una parte ha actuado con temeridad o frivolidad". *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013). En función de ello, la Regla 44.1 (d) de Procedimiento Civil establece, en su parte pertinente, que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta". 32 LPRA Ap. V, R.

44.1 (d). Nuestro Tribunal Supremo ha definido el concepto de temeridad como "las actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". 209 DPR 138, 149 (2022). Aunque es sabido que "no es temerario quien plantea asuntos complejos y novedosos, sobre los cuales no existan precedentes vinculantes … es claramente temeraria la parte que insiste contumazmente en alegar algo sin alguna prueba fehaciente que lo apoye". *Id.*

Entendemos pertinente comenzar nuestra discusión precisando que la apelante, tanto en su reclamación ante la aseguradora como en su demanda, alegó cubierta bajo el "Business Income (and Extra Expense) Coverage" de la póliza. De una lectura cautelosa del contrato vemos que la precitada cláusula ofrecía resarcimiento por pérdida de ingresos debido a la suspensión de operaciones. La cobertura bajo dicha cláusula fue expandida por el endoso titulado "Utility Services - Time Element", el cual estipulaba que la cobertura por pérdida de ingresos se entendía modificada para incluir como causa de suspensión de operaciones la falta de servicio de energía eléctrica y/o comunicaciones. En consecuencia, cuando interpretamos conjuntamente ambas disposiciones, es forzoso concluir que quien alegue la activación de la póliza, debe evidenciar no solo la causa de la suspensión de operaciones, sino demostrar fehacientemente la pérdida de ingresos y gastos extraordinarios incurridos a raíz de dicha suspensión. Es precisamente la ausencia o existencia de esta prueba la controversia central de este caso. Aclarado lo anterior, procedemos con los señalamientos de error de la apelada.

Arguye la apelante que el foro primario erró al imponerle el peso de evidenciar que los concesionarios de autos no estaban operando para lograr demostrar su pérdida de ingresos. Entiende ALF que dicha exigencia tuvo el efecto de invertir indebidamente el peso de la prueba en su contra, ya que, según nuestra jurisprudencia, es la aseguradora quien tiene la obligación de demostrar que aplica una cláusula de exclusión. Añade ALF que la teoría de Óptima sobre los concesionarios, y la exigencia de que ALF presentara prueba al respecto, fue diseñada para justificar la denegatoria de la cubierta bajo la cláusula de interrupción de negocio, y completamente ignorar la cobertura del endoso, entiéndase, que la interrupción de operaciones fue resultado de la falta de energía eléctrica y comunicaciones. No le asiste la razón.

Si bien es cierto que la aseguradora tiene que probar la aplicabilidad de una cláusula de exclusión bajo *Rivera Matos v. ELA, supra*, ese caso no es aplicable al caso de autos. Primeramente, Óptima no fundamentó su denegatoria bajo una cláusula de exclusión, sino bajo un fundamento de ausencia de prueba. En segundo lugar, el Tribunal Supremo claramente estableció que inicialmente le corresponde al asegurado demostrar que su reclamación está comprendida dentro de las disposiciones del contrato. Por tal motivo, la determinación de nuestro más alto foro no tiene el efecto de relevar a la asegurada de fundamentar su reclamación.

ALF además argumenta que el foro primario erró al resolver que la apelante no logró demostrar que sus daños estaban cubiertos bajo la póliza. Es su postura, que demostró exitosamente que los huracanes provocaron daños a las líneas de transmisión de fibra óptica, los cables

coaxiales, las antenas de microondas, y a las plantas generatrices, subestaciones, y transformadores, y que así pudo evidenciar las interrupciones en los servicios de comunicaciones y energía eléctrica, respectivamente. Por tal razón, entiende ALF que logró activar la cobertura de la póliza pues pudo cumplir con lo exigido en el endoso, entiéndase, que hubo una interrupción en los servicios de energía y comunicaciones. Tampoco le asiste la razón.

La apelante arguye, tanto en su solicitud de sentencia sumaria como en su recurso de apelación, reiteradamente que la única evidencia necesaria es aquella que demuestre los daños que sufrieron los equipos y/o propiedad que suplían los servicios de energía eléctrica y comunicaciones. Fundamentando así sus argumentos sin presentar prueba adicional sobre daños específicos de ingresos dejados de devengar debido al cese de operaciones y gastos extraordinarios incurridos tras la relocalización de sus oficinas. ALF pretende separar el texto del endoso del resto de la póliza, pero como ya vimos, los contratos de seguros se interpretan globalmente, a base del conjunto total de sus términos. No perdamos de vista que, según el texto del contrato, lo determinante para activar la póliza no es meramente evidenciar la falta de energía y comunicaciones, también es imprescindible probar la pérdida de ingresos debido a la suspensión de operaciones, lo cual no ocurrió en este caso.

Debido a esto, estamos imposibilitados de concluir que el foro primario erró en su apreciación de la prueba. No podemos permitir que ALF ignore el texto de la cláusula de "Business Income (and Extra Expense) Coverage" y así eximirlo del peso de establecer que su

reclamación está comprendida dentro de las disposiciones del contrato que libremente pactó con Óptima.

Finalmente, ALF señala que el foro primario actuó indebidamente al determinar que la apelante fue temeraria en la tramitación de su reclamación y en imponer la suma de $10,000 en honorarios de abogados. Resolvemos que el foro tampoco erró en su decisión. El Tribunal de Primera Instancia correctamente concluyó que la apelante conocía desde el 2022, entiéndase desde que el Tribunal denegó inicialmente disponer del caso por la vía sumaria, que no contaba con prueba admisible para probar la existencia de daños específicos que dieran paso a la activación de la cobertura. Por más de dos años la parte continuó firme en su errada interpretación de la póliza y nunca pudo presentar la prueba que el foro ya le había indicado que necesitaba. Ante esto, resolvemos que ALF fue temeraria ante su insistencia contumaz de alegar su caso sin proveer prueba fehaciente. En cuanto a la cantidad concedida en honorarios de abogados, otorgamos completa deferencia al Tribunal de Primera Instancia en su estimación pues fue quien estuvo manejando el caso por más de seis años y quien mejor conoce el grado de temeridad, el trabajo realizado, el nivel profesional de los abogados, y las demás circunstancias del pleito. *COPR v. SPU,* 181 DPR 299, 342-343 (2011).

Con relación al auto de *certiorari* presentado para impugnar la *Resolución* del 30 de mayo de 2024, resolvemos que la determinación del foro primario, de declarar con lugar el memorando de costas y ordenar el reembolso reducido de los honorarios de peritos para así cumplir con la razonabilidad de honorarios que exige nuestro ordenamiento jurídico, no fue irrazonable, parcial o discrecionalmente

excesiva. En este aspecto, no advertimos que se articule un argumento sustancial que nos lleve a concluir que el foro recurrido desbordó el ámbito de su discreción o incurrió en error manifiesto. En vista de ello, y a la luz del derecho aplicable, denegamos el auto solicitado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones