ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| HON. RAFAEL HERNÁNDEZ MONTAÑEZ | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| | KLCE202400488 | Caso Número: SJ2024CV02903 |
| EX PARTE | | Sobre: Solicitud de orden al amparo del Artículo 34-A del Código Político |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece la Oficina de Ética Gubernamental (OEG; peticionaria) mediante una *Petición de certiorari* y nos solicita que se deje sin efecto, la *Resolución y Orden* dictada en corte abierta el 30 de abril de 2024 y notificada por escrito el 1 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), que encontró incurso en desacato civil al Director de la OEG al no cumplir con un requerimiento de la Comisión Anti Corrupción de la Cámara de Representantes de Puerto Rico (Cámara de Representantes; parte recurrida).

Adelantamos que se deniega la expedición del auto de *certiorari*.

**I**

El 10 de febrero de 2021, la representante Martínez Soto presentó la Resolución de la Cámara número 260 (R. de la C. 260), referida a la Comisión de Asuntos Internos, "[p]ara ordenar a la Comisión de Desarrollo y Fiscalización de Fondos Gubernamentales de la Región Sur Central de la Cámara de Puerto Rico, a realizar una investigación abarcadora sobre la titularidad de la rampa de acceso al mar para pescadores y otros activos del sector Playa del municipio de Santa Isabel, y para otros fines."[1] Además, el 16 de febrero de 2021, el representante

---

[1] *Petición de certiorari*, Apéndice III, págs. 35-37.

Número Identificador
RES2024_____

Ferrer Santiago presentó la Resolución de la Cámara número 272 (R. de la C. 272), referida a la Comisión de Asuntos Internos, "[p]ara ordenarle a la Comisión Anti-Corrupción e Integridad Pública de la Cámara de Representantes del Estado Libre Asociado de Puerto Rico, realizar una investigación abarcadora y continua sobre las estructuras gubernamentales y los posibles vacíos legales que puedan permitir actos de corrupción en el servicio público; revisar las leyes, reglamentos y demás medidas para que éstas fomenten la integridad en el Gobierno y los principios éticos en el ejercicio del cargo público; analizar y revisar la política pública, texto y penas de los delitos sobre corrupción y acciones contrarias a la ética en el Gobierno; revisar la organización, estructura, facultades, funciones planes y ejecución del Panel sobre el Fiscal Especial Independiente (PFEI), la Oficina del Contralor de Puerto Rico, la Oficina de Ética Gubernamental y la Oficina del Inspector General, entre otros asuntos; y para otros fines relacionados.[2]

El 5 de abril de 2021, la Comisión de Desarrollo y Fiscalización celebró una vista pública que se convirtió en una vista ejecutiva de la R. de la C. 260, en la que depuso el Lcdo. Rafael A. Machargo Maldonado (Lcdo. Machargo), ex secretario del Departamento de Recursos Naturales y Ambientales.[3] El deponente, a preguntas del representante Ferrer Santiago, admitió haberse reunido con el alcalde Questell, que se movilizaron con otras personas al área objeto de la querella y que se dialogó sobre la verja en cuestión y de una posible transacción de la querella.[4] Por lo antes expuesto, el 6 de abril de 2021, el representante Ferrer Santiago y la representante Martínez Soto, remitieron a la OEG un referido para la correspondiente investigación al entender "que tanto el deponente, el ex alcalde y [un] cabildero pudieron haber incurrido en delitos, faltas éticas [o] administrativas."[5]

El 19 de abril de 2021, la OEG notificó por escrito al representante

---

[2] *Id.*, Apéndice IV, págs. 38-40.
[3] *Id.,* Apéndice V, págs. 41-50.
[4] *Id.*, pág. 42.
[5] *Id.*

Ferrer Santiago, como promovente de la investigación, que el asunto referido fue acogido para investigación, identificada con el siguiente número de referencia 2021-IP-0226.[6] Transcurridos casi tres años después, el 26 de febrero de 2024, la OEG notificó por escrito al representante Ferrer Santiago y a la representante Martínez Soto lo siguiente:

> El Área de Investigaciones y Procesamiento Administrativo de la Oficina de Ética Gubernamental (OEG) evaluó la información contenida en su referido. Luego de llevar a cabo la investigación de rigor y evaluar la totalidad del expediente investigativo relacionado con este referido, la OEG no estaría presentando alguna causa de acción administrativa en virtud de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012 según enmendada.
>
> Por tanto, le notificamos que hemos procedido con el archivo de este asunto, sin trámites ulteriores.[7]

El 1 de marzo de 2024, como Presidente de la Comisión de Anti-Corrupción e Integridad Pública de la Cámara de Representantes (Comisión Anti-Corrupción), el representante Ferrer Santiago envió por escrito un *Requerimiento de Información – Resolución de la Cámara 272*, a los fines de obtener de la OEG el "Expediente completo con numeración 2021-IR-0226, sobre [el] referido realizado el **6 de abril de 2021**".[8] Además, se expuso en el requerimiento lo siguiente:

> De entender que la documentación solicitada es confidencial, comuníquese con nuestra oficina para tomar las medidas necesarias para la entrega y recibo de los documentos requeridos, según dispone el procedimiento dispuesto mediante el Reglamento de la Cámara de Representantes para la entrega de documentos confidenciales.
>
> Por lo antes expuesto, solicitamos tenga a bien someter dicha información **en o antes de cinco (5) días laborables**, en nuestra oficina ubicada en el tercer (3er) piso del Edificio Medicina tropical. También deberá ser enviada a través de correo electrónico: ComAnticorrupcion@camara.pr.gov.[9]

Mediante una carta suscrita el 8 de marzo de 2024, por conducto de su Director ejecutivo, el licenciado Luis A. Perez Vargas, la OEG informó su respuesta al *Requerimiento de Información – Resolución de la*

---

[6] *Petición de certiorari*, Apéndice VI, pág. 51.
[7] *Id.*, Apéndice VII, pág. 52.
[8] *Id.*, Apéndice VIII, págs. 53-57.
[9] *Id.*, págs. 53-54.

*Cámara 272*,[10] en la cual, luego de reconocer "que el poder investigativo de la Asamblea Legislativa frente a la Rama Ejecutiva es amplio, pero ciertamente no absoluto" y de hacer referencia a jurisprudencia del Tribunal Supremo de Puerto Rico, en esencia expresó siguiente:

> [L]a OEG sostiene que la R. de la C 272 no le concede autoridad para esta petición puntual y que lo solicitado no guarda relación ni pertinencia con el propósito legislativo de la resolución. Finalmente, aun en el caso de superarse este escollo jurisdiccional, debe destacarse que el expediente solicitado goza de confidencialidad por disposición de ley y de un carácter privilegiado que impide su divulgación, lo que también nos imposibilita de suplirlo según solicitado.[11]

El 12 de marzo de 2024, por conducto del representante Ferrer Santiago y el presidente de la Cámara de Representantes, Rafael Hernández Montañez, la Comisión Anti-Corrupción nuevamente envió el *Requerimiento de Información – Resolución de la Cámara 272* para solicitar el "Expediente completo con numeración 2021-IR-0226, sobre [el] referido realizado el **6 de abril de 2021**".[12] En esencia, se solicitó en el requerimiento lo siguiente:

> La presente solicitud de información, en lo práctico y tangible, es una información solicitada por esta Comisión como parte de la investigación ordenada por la Resolución de la Cámara 272. El requerimiento de dicho expediente a su Oficina forma parte de una serie de requerimientos hechos a varias agencias para evaluar la ejecución de estas. En la carta sobre el requerimiento de información enviada el pasado 1 de marzo de 2024, se le dio la opción que la documentación solicitada era confidencial, se comunicara con nuestra Oficina para tomar las medidas necesarias para la entrega y recibo de los documentos requeridos, según dispone el procedimiento mediante el Reglamento de la Cámara de Representantes para la entrega de documentos confidenciales.
>
> […]
>
> El referido expediente corresponde a una investigación administrativa debidamente adjudicada por su agencia, donde se determinó que no existía base legal para imponer sanciones o penalidades basado en las alegaciones incluidas en la querella, Por lo tanto, ante su agencia no existe ningún trámite o proceso pendiente de adjudicación sobre el cual pueda reclamar la existencia de algún privilegio. De igual forma, el Departamento de Justicia determinó que no existían fundamentos legales para iniciar un procesamiento criminal por estos mismos hechos, por lo que ante esta agencia tampoco existe un trámite paralelo

---

[10] *Id.*, Apéndice IX, págs. 58-60.
[11] *Id.*, págs. 59-60.
[12] *Id.*, Apéndice X, págs. 61-63.

que pueda comprometer la confidencialidad que cobija al sumario fiscal. Por lo tanto, la negativa a divulgar este expediente es arbitraria, improcedente, injustificada y sin validez legal.

Le recordamos que esta Comisión esta revestida de los poderes constitucionales de la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico. Específicamente, las Secciones 1 y 17, del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, reconocen las prerrogativas investigativas de esta Rama Constitucional, por el vínculo existente con su facultad de legislar. *Peña Clos v. Cartagena Ortiz*, 114 DPR 576 (1983). En este contexto, nuestro Tribunal Supremo ha establecido que "la incuestionable prerrogativa investigativa de la Asamblea Legislativa … se considera indispensable e inseparable de su facultad de legislar. Negar el poder de investigación equivaldría al absurdo de exigirle a la Legislatura proporcionar remedios en la oscuridad. *Banco Popular, Liquidador v. Corte*, 63 DPR 66 (1944).[13]

Además, en el requerimiento antes citado, se hace referencia a lo dispuesto en el Reglamento de la Cámara de Representantes del Estado Libre de Puerto Rico vigente, y, también al Artículo 34-A del Código Político, sobre la legitimación de la Cámara para citar a personas o entidades a comparecer para interrogar a los testigos correspondientes y a producir información requerida en relación con los asuntos o investigaciones pendientes ante ese cuerpo legislativo.[14]

El 15 de marzo de 2024, la OEG envió por escrito su respuesta a la carta enviada el 12 de marzo de 2024 por el representante Ferrer Santiago y el presidente de la Cámara de Representantes, Honorable Rafael Hernández Montañez,[15] en la cual se negó nuevamente a entregar el "Expediente completo con numeración 2021-IR-0226, sobre [el] referido realizado el **6 de abril de 2021**" reiterando sus reclamos de confidencialidad y también expuso lo siguiente:

El expediente investigativo de la OEG, valga puntualizar, es confidencial no solo porque incluye memorandos preparados por los servidores públicos de la OEG en el ejercicio de su cargo sino también porque contiene las impresiones mentales del abogado investigador a cargo del caso, sus observaciones, ideas y estrategias para trabajar la investigación y el posterior litigio del asunto en los casos que proceda. **Estas ideas y cursos de acción están protegidas por la doctrina del producto del trabajo del**

---

[13] *Id.*, pág. 62.
[14] *Id.*, págs. 62-63.
[15] *Id.*, Apéndice XI, págs. 64-70.

**abogado y son de naturaleza confidencial y privilegiada**. (Énfasis en original.)[16]

El 27 de marzo de 2024, la parte recurrida presentó ante el TPI una *Petición* de naturaleza *Ex Parte* al amparo del Artículo 34-A del *Código Político*[17] y, ese mismo día, el TPI dictó una *Resolución y Orden*, en la cual concedió a la OEG un término perentorio de cinco días laborables a partir de su notificación, para que produjera y entregara a la parte recurrida el "Expediente completo con enumeración 2021-IF-0226, sobre un referido realizado el 6 de abril de 2021". En esa *Resolución y Orden,* el TPI también indicó que, como medida prudencial y cautelar en atención a los planteamientos que fueron presentados por la OEO, se le autorizaba a suprimir o tachar de los documentos contenidos en el expediente solo aquella información que se relacione directamente con los procesos mentales o deliberativos de los funcionarios de la entidad gubernamental con respecto al asunto que fue objeto de investigación, utilizando un "índice de Vaughn".[18]

El 1 de abril de 2024, la OEG fue notificada de la *Resolución y Orden* del 27 de marzo de 2024 y así fue acreditado por la parte recurrida ante el TPI ese mismo día mediante *Moción para acreditar diligenciamiento de Resolución y Orden.*[19] La OEG presentó, el 2 de abril de 2024, una *Moción en solicitud de término adicional,*[20] en la cual solicitó un término adicional para explicar y poder fundamentar su posición con relación al expediente investigativo que custodia la OEG. El TPI le concedió, el 2 de abril de 2024, un término de 24 horas a los recurridos para que se expresaran en cuanto a la prórroga solicitada.[21] Atendida la *Moción en cumplimiento de orden* presentada el 3 de abril de 2024,[22] por los recurridos, en esa misma fecha el TPI le concedió a la OEG un término adicional hasta el 12 de abril de 2024, para que produjera lo

---

[16] *Id.*, pág. 68.
[17] *Id.*, Apéndice XII, págs. 71-98.
[18] *Id.*, Apéndice XIII, págs. 99-105.
[19] *Id.*, Apéndice XIV, págs. 106-112.
[20] *Id.*, Apéndice XV, págs. 113-114.
[21] *Id.*, Apéndice XVI, pág. 115.
[22] *Id.*, Apéndice XVII, págs.116-118.

solicitado por la Comisión Anti-Corrupción de la Cámara de Representantes.[23]

La OEG presentó, el 12 de abril de 2024, una *Moción en oposición a petición y en solicitud de desestimación*,[24] con 14 anejos, en la cual reiteró su postura del carácter confidencial y privilegiado del expediente investigativo 2021-IP-0226, y que "esta cobijado por el privilegio ejecutivo y por el [privilegio] del producto del trabajo del abogado, por lo que no procede entregar el expediente", y solicitó al TPI "que declare que no procedía la solicitud de la Comisión de Integridad Pública y Anti-Corrupción de la Cámara de Representantes al amparo de la R. de la. 272, por no existir correlación entre la investigación legislativa y el requerimiento hecho a la OEG".[25] En esa misma fecha, el TPI emitió y notificó una *Resolución*[26] en la cual señaló que los "planteamientos sustantivos esbozados por la OEG podrán ser atendidos oportunamente en caso de que la parte peticionaria presente una solicitud de desacato" y se reafirmó en lo ordenado en la *Resolución y Orden* del 27 de marzo de 2024, "incluyendo las directrices impartidas en cuanto a cómo debe invocar los privilegios cualificados de procesos deliberativos, ejecutivo y/o de información oficial."[27] Además, el foro recurrido dispuso lo siguiente:

> Y es que, dado que no es posible discernir la aplicabilidad de tales privilegios de forma generalizada ni en términos abstractos, **el proceso establecido por el Tribunal en la Resolución y Orden facilitará el balance de intereses que necesariamente deberá realizar el Tribunal en su momento conforme a la normativa constitucional aplicable a esa posible controversia**. Véanse *Peña Clos v. Cartagena Ortiz*, 114 DPR 576 (1983); *Bhatia Gautier v. Gobernador et.al.*, 199 DPR 59 (2017). (Énfasis en original.)[28]

El 22 de abril de 2024, la parte recurrida presentó ante el TPI una *Moción para que se emita una orden de des[a]cato contra la Oficina de Ética Gubernamental.*[29] El TPI emitió y notificó, el 23 de abril de 2024, una

---

[23] *Id.*, Apéndice XVIII, pág.119.
[24] *Id.*, Apéndice XIX, págs. 120-246.
[25] *Id.*, págs. 131-132.
[26] *Id.*, Apéndice XX, págs. 247-250.
[27] *Id.*, págs. 249-250.
[28] *Id.*, pág. 250.
[29] SUMAC, SJ2024CV02903, Entrada Núm. 13.

*Orden* en la cual señaló una vista de "DESACATO" para el martes, 30 de abril de 2024, a las 2:30 p.m.[30] La OEG presentó, el 30 de abril de 2024 a las 11:20 am, una *Moción informativa*[31] en la que acompañó una *Declaración jurada,* suscrita por el subdirector auxiliar del AIPA de la OEG, Lcdo. Nino Francisco Rivera Hernández, en la cual se desglosan los documentos que contiene el expediente [investigativo 2021-IP-0226] y los fundamentos por lo[s] cuales se objeta la divulgación de estos por su naturaleza privilegiada o las razones por las cuales no es necesario divulgarlos ya que están disponibles por otros medios."[32]

El 30 de abril de 2024, a las 2:30 p.m., se celebró la vista de desacato mediante videoconferencia. En la referida vista, la OEG reiteró todos sus argumentos sobre las cuales no procede divulgar el expediente investigativo 2021-IP-0226. Luego de escuchar los argumentos de ambas partes, el TPI resolvió que la R. de la C. 272 le otorgaba jurisdicción a la Comisión Anti-Corrupción de requerir el expediente investigativo de referencia. Aunque se reconoció que pudiera aplicar el privilegio de procesos deliberativos, se afirmó que la *Declaración jurada* suscrita por el licenciado Rivera Hernández no cumplía con lo requerido para que fuera considerado como un "índice de Vaughn".

Surge de la *Minuta* de la Vista de Desacato del 30 de abril de 2024[33], que el Juez dispuso en corte abierta lo siguiente: (1) concedió "un término intermedio, pero final y perentorio, de 10 días, es decir, hasta el 10 de mayo de 2024, para la entrega de los documentos; (2) "destacó que si no se cumplía con la orden en este plazo, podría emitir una orden de arresto o imponer una multa indefinida como sanción por desacato; y, (3) "permitió que cierta información se tachara del expediente, como datos personales sensibles, pero dejó claro que cualquier controversia sobre la

---

[30] *Petición de certiorari*, Apéndice XXI, págs. 251-253.
[31] *Id.*, Apéndice XXII, págs. 254-258.
[32] *Id.*, pág. 254.
[33] SUMAC, SJ2024CV02903, Entrada Núm. 21, págs. 1-7.

información tachada podría ser discutida y resuelta por el Tribunal en su momento."[34]

El 1 de mayo de 2024, el TPI emitió y notificó una *Resolución y Orden*[35] en la cual dispuso lo siguiente:

> Por todo lo anterior, se dicta la presente **Resolución y Orden** mediante la cual se declara **Ha Lugar** la solicitud de desacato civil presentada por la parte peticionaria el 22 de abril de 2024. Entrada núm. 13 del expediente electrónico.
>
> Dado que mediante la presente Resolución y Orden el Tribunal ha adjudicado la totalidad de las cuestiones constitucionales, legales y de hecho levantadas por la promovida, se mantienen provisionalmente en suspenso los remedios del desacato civil y se concede a la Oficina de Ética Gubernamental y a su Director Ejecutivo, Sr. Luis Pérez Vargas, **un término final y perentorio a vencer el 10 de mayo de 2024 a las 5:00 p.m.**, de modo que pueda producir el expediente completo con enumeración 2021-IP-0226.
>
> Se aclara que, mediante dicha entrega, la OEG solo podrá tachar o suprimir aquella información contenida en documentos particulares sobre la cual terceros alberguen alguna expectativa razonable de intimidad (tal como números de seguro social o números telefónicos personales), nombres de confidentes, o notas con impresiones mentales que no formen parte íntegra de la determinación de la agencia. Aun así, se aclara que deberá entregarse, entre otros documentos, el "Informe de investigación con recomendación de archivo con fecha del 26 de febrero de 2024" y el intercambio de comunicaciones interagenciales, (pues no se demostró en la vista de desacato que en efecto éstas estén cobijadas por privilegio alguno, ni tampoco que tal privilegio prevalecería sobre el fin legislativo del requerimiento de información invocado por la parte peticionaria). De surgir alguna controversia con tales tachaduras o información suprimida, el Tribunal la atenderá oportunamente con el beneficio de los argumentos de las partes.
>
> Por último, y en atención a lo aquí resuelto, se apercibe a la Oficina de Ética Gubernamental y a su Director Ejecutivo, Sr. Luis Pérez Vargas, que el incumplimiento de esta Resolución y Orden pudiera conllevar que el Tribunal emita inmediatamente la correspondiente orden de arresto y reclusión por un término indefinido, o la imposición de una multa indefinida, hasta tanto se acredite el cumplimiento con lo ordenado.[36]

Inconforme con lo dispuesto en la *Resolución* y *Orden* emitida y notificada el 1 de mayo de 2024, la OEG presentó una *Petición de*

---

[34] *Id.*, págs. 6-7.
[35] *Petición de certiorari*, Apéndice I, págs. 1-31
[36] *Id.*, págs. 30-31.

*certiorari* ante este Tribunal de Apelaciones, en la cual expuso los siguientes señalamientos de errores:

**Primer error**

**Erró el TPI al determinar que la R. de la C. 272 le otorga jurisdicción a la Comisión Anti-Corrupción de requerir el expediente investigativo 2021-IP-0226.**

**Segundo error**

**Erró el TPI al ordenar al Director Ejecutivo de la OEG la entrega del expediente investigativo 2021-1P-0226 a los recurridos, ya que dicho expediente es confidencial por disposición expresa de la LOOEG [Ley Orgánica de la Oficina de Ética Gubernamental] y porque está cobijado por el privilegio ejecutivo, el privilegio sobre procesos deliberativos y la doctrina del producto del trabajo del abogado.**

Además, el 3 de mayo de 2024, la OEG presentó una *Solicitud urgente de orden provisional en auxilio de jurisdicción para que se ordene la paralización de los procedimientos ante el Tribunal de Primera Instancia*, por lo que se ordenó la **paralización de los procedimientos en el Tribunal de Primera Instancia hasta que otra cosa dispusiera este Tribunal de Apelaciones**, y se concedió hasta el **lunes 13 de mayo de 2024** a la parte recurrida, el Honorable Rafael Hernández Montañez, en su capacidad oficial como Presidente de la Cámara de Representantes de Puerto Rico, y el Honorable Héctor E. Ferrer Santiago, en su capacidad oficial como Presidente de la Comisión Anti-Corrupción e Integridad Pública de la Cámara de Representantes de Puerto Rico, para que presentaran su posición en torno al recurso presentado. El 7 de mayo de 2024, la parte recurrida presentó el escrito titulado *Alegato de la parte recurrida*. Con el beneficio de los escritos de las partes, resolvemos.

**II**

**A. Privilegio Ejecutivo**

El Tribunal Supremo de Puerto Rico reconoció el "privilegio ejecutivo" como un concepto derivado del Art. I, Sec. 2 y Art IV, Secs. 1 y 4 de la Constitución de Puerto Rico. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 89 (2017), que cita a *Peña Clós v. Cartagena Ortiz*, 114 DPR 576, 597-598 (1983). Es decir, la Constitución de Puerto Rico "adoptó un

Poder Ejecutivo unitario al investir a un solo funcionario -el Gobernador- con la autoridad suprema en la Rama Ejecutiva". *Santana v. Gobernadora*, 165 DPR 28, 47 (2005). Así definido, el privilegio ejecutivo "*busca proteger las comunicaciones entre el Primer Ejecutivo y sus respectivos subalternos, asesores o ayudantes.*" *Bhatia Gautier v. Gobernador, supra*, pág. 89. (Énfasis en original.)

### B. Privilegio sobre información utilizada por funcionarios públicos durante procesos deliberativos

El "Privilegio sobre información utilizada por funcionarios públicos durante procesos deliberativos", mencionado en los escritos de las partes como el "privilegio deliberativo", no se refiere como tal por el Tribunal Supremo de Puerto Rico, pues se reconoce más bien como sigue:

> [S]e trata de un documento "preparado para asistir en la toma de decisiones del [G]obierno ... previo a tomar las mismas". El privilegio que protege a esta categoría de información gubernamental busca que, a la hora de tomar decisiones de política pública, los funcionarios públicos se comuniquen entre sí de la forma más honesta posible. Para que el Gobierno pueda beneficiarse de este privilegio deberá seguir el siguiente proceso: (1) luego de ponderar al respecto, el jefe de la agencia que tiene la información o los documentos debe reclamar el privilegio formalmente; (2) "un oficial de la agencia debe proveer las razones por las cuales se reclama la confidencialidad de la información o los documentos", y (3) "el [G]obierno debe identificar y describir la información o los documentos que interesa proteger". E. Rivera Ramos & G. Moros Luces, *Derecho Constitucional*, 88 Rev. Jur. UPR. 39, 72 (2019).

Relacionado con este privilegio el Tribunal se refiere a la legitimación activa de los legisladores como sigue:

> En cuanto a la legitimación activa de los legisladores, hemos reconocido, en diversas instancias, que éstos poseen acción legitimada para "vindicar un interés personal en el ejercicio pleno de sus funciones legislativas afectadas por actuaciones u omisiones del poder ejecutivo". *Noriega v. Hernández Colón*, 135 DPR 406, 428 (1994). Véase, además, *Hernández Torres v. Gobernador*, 129 DPR 824 (1992). En esos escenarios, deberá demostrar que sus derechos constitucionales o estatutarios han sido vulnerados. *Hernández Torres v. Gobernador*, supra.
>
> De igual modo, para que un legislador demuestre que posee legitimación activa debe cumplir con los requisitos exigidos a los ciudadanos particulares. *Hernández Torres v. Hernández Colón et al.*, supra. Para ello tendrá que establecer que ha sufrido un daño claro e inmediato a sus

prerrogativas legislativas. Id. Al cumplir con dicha exigencia, tiene que asegurarse que no está invocando una prerrogativa abstracta y desligada del ejercicio de sus funciones legislativas. Id. En particular, cuando un miembro de la Legislatura alegue que se ha visto afectado porque no se le permite llevar a cabo su función fiscalizadora adecuadamente, debe tener presente que esto solo implica contar con los mecanismos razonables y necesarios que permitan su participación plena en todas las etapas del proceso legislativo. Id. En cuanto al reclamo del derecho a fiscalizar, el legislador deberá agotar todos los remedios que tenga a su disposición en aras de que se le permita y reconozca dicho derecho. Id. Igualmente, el legislador deberá probar que existe una conexión entre el daño que alega haber sufrido y la acción que ejercita. Id. *Bhatia Gautier v. Gobernador*, *supra*, págs. 70-71.

### C. Privilegio para el Producto de Trabajo

La Regla 505 (a) (2) de las de Evidencia, 32 LPRA. Ap. VI, R. 505(a)(2), define el privilegio para el producto del trabajo lo siguiente:

Privilegio para el producto del trabajo. - Significa la protección provista a información que es el producto del trabajo de una parte o de la persona que es abogada, consultora, fiadora, aseguradora o agente de dicha parte, preparada u obtenida en anticipación de, o como parte de una investigación o procedimiento civil, administrativo o penal.

Las Reglas de Evidencia, aplican únicamente en procesos de naturaleza judicial, en el contexto de una relación entre abogado y cliente. 32 LPRA. Ap. VI, R. 103.

### D. *Certiorari*

El recurso de *certiorari* "es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior". *Pueblo v. Colón Mendoza*, 149 DPR 630, 637 (1999). Este es el recurso utilizado "para revisar tanto errores de derecho procesal como sustantivo". *Id.* En nuestro ordenamiento procesal civil, en lo pertinente, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1 dispone lo siguiente:

[…]

**El recurso de *certiorari* para revisar resoluciones** u órdenes interlocutorias **dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones** cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la

denegatoria de una moción de carácter dispositivo. No obstante, y **por excepción a lo dispuesto anteriormente**, el Tribunal de Apelaciones **podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.**

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro).

La norma establecida es que el asunto que se nos plantee en el auto de *certiorari* debe tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, *supra*, toda vez que esta regla enumera taxativamente bajo que materias, solamente, se podrá expedir el auto de *certiorari*. Se ha reiterado que las partes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes o resoluciones interlocutorias sobre materias que no están especificadas en la Regla 52.1 de Procedimiento Civil, *supra*. En estos casos, en los cuales la materia no está comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente. Ante la denegatoria de una moción de sentencia sumaria, el presente recurso tiene cabida bajo las materias comprendidas por la referida regla.

Por consiguiente, debemos realizar un análisis dual para determinar si se expide o no un recurso de *certiorari*. Este examen consta de una parte objetiva y otra parte subjetiva. En primer lugar, debemos analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1 de Procedimiento Civil, *supra*. Es norma reiterada que las partes deben abstenerse de presentar recursos de *certiorari* para revisar órdenes o resoluciones interlocutorias sobre materias que no están especificadas en la Regla 52.1 de Procedimiento Civil, *supra*. En estos casos, en los cuales

la materia no está comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente.

En segundo lugar, debemos analizar si bajo la Regla 40 del Reglamento de Tribunal de Apelaciones que nos concede discreción para autorizar la expedición y adjudicación en los méritos del auto de *certiorari*. A esos fines, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*. Éstos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De acuerdo con lo dispuesto en la Regla 40, *supra*, debemos evaluar "tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada, a los fines de determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido [o] una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Recordemos que la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros",[37] sino que como Tribunal revisor debemos ceñirnos a los criterios antes señalados. **Si luego de evaluar los referidos criterios, decidimos no expedir el**

---

[37] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012), que cita a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).

**recurso, podemos fundamentar nuestra determinación, pero no tenemos la obligación de así hacerlo.**[38]

Los foros apelativos no debemos intervenir con las determinaciones de los tribunales de instancia, "**salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial**". (Énfasis nuestro.) *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Por último, es pertinente enfatizar que **se ha resuelto que el denegar la expedición de un auto de *certiorari* no constituye una adjudicación en los méritos, sino que "es corolario del ejercicio de la facultad discrecional del foro apelativo** intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia". (Énfasis nuestro.) *Torres Martínez v. Torres Ghigliotty*, *supra*, pág. 98.

**III**

La OEG nos señala que el TPI erró al determinar que la R. de la C. 272 le otorga jurisdicción a la Comisión Anti-Corrupción de requerir el expediente investigativo 2021-IP-0226 y que se equivocó al ordenar al Director Ejecutivo de la OEG la entrega del expediente investigativo 2021-1P-0226 a la Comisión Anti-Corrupción de la Cámara de Representantes, ya que dicho expediente es confidencial por disposición expresa de la peticionaria y porque está cobijado por el privilegio ejecutivo, el privilegio sobre procesos deliberativos y la doctrina del producto del trabajo del abogado.

Luego de examinar detenidamente los planteamientos de ambas partes y el derecho aplicable, no vemos que, en el manejo del caso ante el TPI, se haya incurrido en un abuso de discreción o que este haya actuado bajo prejuicio o parcialidad. Finalmente, es norma reiterada que al denegar la expedición de un auto de *certiorari* en estos casos, el

---

[38] 32 LPRA Ap. V, R. 52.1.

Tribunal de Apelaciones no tiene que fundamentar su decisión. A su vez, los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial." (Énfasis nuestro.) *Lluch v. España Service Sta.,* supra, pág. 745.

**IV**

Por los fundamentos antes expuestos, se deniega la expedición del auto de *certiorari*, se deja sin efecto la paralización y se ordena la continuación de los procedimientos.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones