## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL ESPECIAL

| | | |
|---|---|---|
| JOSÉ PADILLA MERCADO, YARIZEL PADILLA MORALES,<br><br>Apelante,<br><br>v.<br><br>ARIEL EDUARDO BERMÚDEZ VERA, por sí y en representación de la sociedad legal de gananciales compuesta con JANE DOE BERMÚDEZ; DR. JORGE CORTÉS RUIZ, por sí y en representación de la sociedad legal de gananciales compuesta con JANE DOE CORTÉS; HOSPITAL HERMANOS MELÉNDEZ; FULANO DE TAL, por sí y en representación de la sociedad legal de gananciales compuesta por ellos; COMPAÑÍA DE SEGUROS X, Y, Z,<br><br>Apelada. | KLAN202400850 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón.<br><br>Civil núm.: BY2018CV01211.<br><br>Sobre: daños y perjuicios; impericia médica. |

Panel integrado por su presidente, el juez Bermúdez Torres, la jueza Romero García y el juez Monge Gómez.

Romero García, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 22 de octubre de 2024.

La parte apelante del título presentó su recurso el 16 de septiembre de 2024. En él, nos solicita que revisemos y revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de julio de 2024, notificada el 17 de julio de 2024. Mediante la misma, el foro primario desestimó con perjuicio la demanda en daños y perjuicios e impericia médica instada por la parte apelante.

Por los fundamentos que expondremos a continuación, confirmamos la sentencia apelada.

Número identificador

SEN2024_____

I

El 8 de julio de 2018, la parte apelante presentó una demanda sobre daños y perjuicios e impericia médica contra el Dr. Ariel Eduardo Bermúdez, por sí y en representación de la sociedad legal de gananciales compuesta con su esposa Jane Doe Bermúdez[1]; el Dr. Jorge Cortés Ruiz, por sí y en representación de la sociedad legal de gananciales compuesta con su esposa, Jane Doe Cortés[2]; el Hospital Hermanos Meléndez (HMM o parte apelada); y varios demandados de nombres desconocidos.

A grandes rasgos, la parte apelante alegó que, el 1 de junio de 2017, la señora Carmen Ana Morales Torres, esposa del apelante José Padilla Mercado y madre de la apelante, Yarizel Padilla Morales, fue ingresada al HMM. Adujo que dicho ingreso estuvo relacionado a una masa en el duodeno[3]. El 2 de junio de 2017, el Dr. Bermúdez, cirujano asignado por el HMM, le extirpó la referida masa a la paciente, la cual resultó ser un tumor carcinoide. La parte apelante adujo que, luego del procedimiento quirúrgico, surgieron varias complicaciones las cuales resultaron en la muerte de la paciente.

Por otro lado, alegó que el Dr. Bermúdez refirió a la señora Morales al Dr. Cortés, gastroenterólogo, para una consulta relacionada a un posible sangrado gastrointestinal. Expuso que el Dr. Cortés le realizó una endoscopía, la cual demostró que esta tenía una úlcera que sangraba. Al respecto, la parte apelante adujo que no se había podido determinar qué manejo médico recomendó el Dr. Cortés, si alguno. Concluyó que, por causa de la negligencia de todos los demandados, la señora Morales

---

[1] Tras una solicitud de desistimiento instada por la parte apelante el 14 de junio de 2024, el Tribunal de Primera Instancia emitió una *Sentencia Parcial*, en la que desestimó la demanda contra el doctor Bermúdez. *Véase*, Sistema Unificado de Manejo y Administración de Casos (SUMAC), entradas 181 y 184.

[2] La causa de acción contra el doctor Cortés fue desestimada con perjuicio, mediante sentencia emitida por este foro apelativo el 13 de julio de 2023, en el recurso de *certiorari* KLCE202300643.

[3] El duodeno es la primera parte del intestino delgado y se localiza entre el estómago y la parte media del intestino delgado o yeyuno. Véase, https://medlineplus.gov/spanish/ency/article/002347.htm (última visita el 18 de octubre de 2024).

falleció. Con respecto al HMM, la parte apelante sostuvo que este respondía solidariamente.

Tras una prórroga concedida[4], el 26 de febrero de 2019, el HMM presentó su contestación a la demanda[5]. En esta, negó todas las alegaciones en su contra y planteó sus defensas afirmativas; entre ellas, que de la demanda no surgían imputaciones directas en su contra sobre responsabilidad conforme al Art. 1802 del Código Civil de Puerto Rico, 31 LPRA sec. 5141. Simultáneamente, el HMM planteó que la demanda no contenía una reclamación que justificara la concesión de un remedio.

Luego de múltiples incidencias procesales, el 25 de noviembre de 2019, el tribunal primario celebró una vista sobre el estado de los procedimientos[6]. En lo que concierne, **el foro recurrido concedió hasta el 13 de marzo de 2020, para finalizar el descubrimiento de prueba**.

Cerca de cuatro (4) años más tarde, **el 2 de octubre de 2023, se llevó a cabo la conferencia con antelación al juicio**[7]. En esta, las partes litigantes estipularon cierta prueba documental. El tribunal primario señaló el **juicio en su fondo para el 15 al 22 de julio de 2024**.

Poco antes de dar inicio al juicio en su fondo, el **23 de junio de 2024**, la parte apelante solicitó autorización al foro primario para permitir la renuncia del perito anunciado, el Dr. Alex D. Andújar Alejandro (doctor Andújar), y que se dejase sin efecto el señalamiento del juicio. En su escrito, informó que el doctor Andújar ya no residía en Puerto Rico, sino en el estado de la Florida; que este había desarrollado varias condiciones de salud; y, que existía un conflicto de interés entre este y el HMM. Sobre esto último, precisó que el hermano del doctor Andújar laboraba para la referida institución hospitalaria y que su madre había sido intervenida allí recientemente y aún recibía tratamiento allí. Así pues, la parte apelante

---

[4] *Véase*, SUMAC, entradas núm. 11 y 16.

[5] *Véase*, apéndice del recurso, a las págs. 15-19.

[6] *Véase*, SUMAC, entrada núm. 49.

[7] *Íd.*, entrada núm. 174.

informó que su perito médico no estaría presente para el juicio; incluso, ni siquiera por videoconferencia[8].

El **25 de junio de 2024, notificada al siguiente día**, el HMM presentó su escrito en oposición[9]. Sostuvo que la solicitud de la parte apelante resultaba en un subterfugio para que se presentara un nuevo perito y el correspondiente informe pericial, en vista de la ausencia de prueba que demostrara la negligencia del HMM. **Precisó que, en los dos (2) informes periciales rendidos por el doctor Andújar, únicamente se incluían imputaciones de negligencia a los doctores que ya no se encontraban en el pleito**.

De otro lado, sostuvo que la moción se fundamentaba en meras alegaciones del representante legal de los apelantes. Especificó que el escrito carecía de una declaración jurada, carta o correo electrónico del perito, en los que notificase su intención de no testificar. Añadió que era el doctor Andújar quien debía testificar bajo juramento sobre el supuesto conflicto de interés y su negativa a comparecer como testigo.

Por último, el HMM señaló que no existía conflicto de interés alguno entre este y el doctor Andújar. **La parte apelada expuso que el Hospital Hermanos Meléndez, Inc., había dejado de existir desde septiembre de 2018, cuando sus activos fueron vendidos a los dueños de lo que hoy en día se conoce como Bayamón Medical Center**. Arguyó que, en vista de ello, no era el HMM quien empleaba al hermano del doctor Andújar, ni mucho menos quien mantenía recluida a la madre de este.

Atendidos los escritos de las partes, el **26 de junio de 2024**, el Tribunal de Primera Instancia denegó la solicitud de sustitución[10] y dispuso, en su parte pertinente, como sigue:

> Las razones planteadas para la alegada no disponibilidad del perito no nos convencen y no existe el conflicto de intereses aludido. No es razonable la solicitud de la parte demandante

---

[8] La parte apelante indicó textualmente: "Tampoco bregaría con videoconferencia ya que no nos tendría [refiriéndose al médico] a nosotros para antes, durante y después de su testimonio en Corte." *Véase*, apéndice del recurso, a la pág. 8, alegación núm. 5.

[9] *Véase*, apéndice del recurso, a las págs. 22-25.

[10] *Íd.*, a la pág. 6.

en torno a la suspensión del juicio y sustitución de su perito, a semanas del juicio, tratándose de un caso del año 2018, en el cual las partes han realizado un amplio descubrimiento de prueba y han incurrido en gastos de litigio considerables. La sustitución del perito de la parte demandante, en esta etapa procesal tan avanzada, implicaría una reapertura del descubrimiento de prueba, lo cual es inconsecuente con la buena marcha de los procesos judiciales. Se puntualiza que el juicio comenzará el 15 de julio de 2024, según señalado desde hace meses.

Inconforme, el 27 de junio de 2024, la parte apelante solicitó la reconsideración[11]. En lo atinente, solicitó un término de quince (15) días para someter una declaración jurada del doctor Andújar, acompañada de evidencia documental sobre su condición médica. Adujo que, con ello, el tribunal tendría la oportunidad de emitir una determinación educada.

El 28 de junio de 2024, el foro primario declaró sin lugar la reconsideración[12].

Inconforme, el 10 de julio de 2024, la parte apelante acudió ante nos mediante el recurso de *certiorari* KLCE202400760. En dicha ocasión, denegamos la expedición del auto.

De vuelta al foro primario, el 15 de julio de 2024, comenzó el juicio en su fondo. Conforme surge de la minuta[13], la parte apelante informó que su perito no comparecería por razones de salud[14]. Ante ello, requirió la suspensión del juicio nuevamente, para entonces presentar un certificado médico sobre las condiciones del doctor Andújar. En la alternativa, solicitó que se iniciara el juicio con el testimonio de la apelante, señora Yarizel

---

[11] *Véase*, apéndice del recurso, a las págs. 2-5. Hacemos constar que la segunda página del escrito no fue enumerada.

[12] *Véase*, apéndice del recurso, a la pág. 1. En este punto, es menester apuntar que, el 1 de julio de 2024, la parte apelante presentó una moción a la que adjuntó una declaración jurada del doctor Andújar, suscrita también el 1 de julio de 2024. En ella, el doctor Andújar da cuenta de las condiciones de las que padece y **que, evidentemente, son preexistentes a este caso, aunque puedan haberse agudizado recientemente**. El médico no menciona nada sobre el hecho de que su hermano fungiera como médico en el HMM. Sí da cuenta de la situación de salud de su madre, que conllevó su hospitalización en el HMM allá para el 28 de marzo de 2024. *Íd.*, a la pág. 26-27; la declaración jurada no fue enumerada. Subrayamos, además, que el foro primario, a solicitud de la parte apelada, dio por no presentada la moción que adjuntó la declaración jurada. *Íd.*, a la pág. 32. A pesar de ello, la parte apelante la adjuntó al apéndice de este recurso.

[13] *Véase*, SUMAC, entrada núm. 201.

[14] La parte apelante reiteró que el doctor Andújar no podía comparecer mediante videoconferencia, pues no contaba con la facilidad para ello.

Padilla Morales, y que se le permitiera llamar al perito del HMM como testigo hostil.

HMM se opuso. Sostuvo que, ante la falta de evidencia, procedía la desestimación del pleito. Además, adujo que la parte apelante estaba imposibilitada de establecer el caso con la prueba pericial del HMM. Añadió que su perito declararía únicamente en caso de ser necesario.

Atendidos los argumentos de las partes, el Tribunal de Primera Instancia se reiteró en la resolución emitida el 25 de junio de 2024, notificada al día siguiente. En cuanto a la solicitud para suspender el juicio y presentar un certificado médico, consignó que de la declaración jurada del doctor Andújar se desprendía que este laboraba seis (6) días a la semana, por lo que no se encontraba en una condición grave. Sobre permitir que se llamara al perito del HMM como testigo hostil, el foro primario concluyó que resultaba improcedente. Precisó que no concurrían las condiciones que exige el ordenamiento jurídico para ello.

Finalmente, el foro *a quo* concluyó que la ausencia de prueba pericial derrotaba el peso probatorio de la parte apelante. A su vez, determinó que la suspensión del juicio en una etapa tan avanzada provocaría la reapertura del descubrimiento de prueba, lo cual conllevaría graves repercusiones a HMM, quien no había ocasionado dilaciones y estaba preparado para el juicio en su fondo. Consecuentemente, el foro primario dictó la sentencia recurrida y desestimó la demanda con perjuicio[15].

Insatisfecha, el 1 de agosto de 2024, la parte apelante solicitó la reconsideración[16]. Por medio de esta, sostuvo que mantener la vigencia del dictamen le causaría un perjuicio indebido, puesto que se excluyó una prueba esencial que podría afectar significativamente la adjudicación y el desenlace del pleito. Así pues, solicitó al foro primario que se le concediera la oportunidad de presentar toda la certificación médica necesaria, "y hasta

---

[15] *Véase*, apéndice del recurso, a las págs. 35-40.

[16] *Íd.*, a las págs. 41-51.

la presentación, si fuere requerido, de algún perito médico que disponga sobre la condición médica que aqueja a su perito, de tal manera que el tribunal estuviera en una posición mucho más informada para poder determinar la procedencia de la sustitución solicitada"[17].

El 13 de agosto de 2024, notificada el 16 de agosto de 2024, el tribunal recurrido declaró sin lugar la reconsideración[18].

Aún inconforme, el 16 de septiembre de 2024, la parte apelante compareció y formuló el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia, Sala de Bayamón, por conducto de la Jueza Sarah Rosado, al declarar NO HA LUGAR, nuestra moción de reconsideración que cuestionó su Sentencia con su determinación sobre denegar el asunto de la participación pericial de la parte demandante en el caso, y no permitir la alternativa del uso de la perita opuesta como testigo hostil en el juicio.

El 16 de octubre de 2024, el HMM presentó su alegato en oposición.

Examinados los escritos de las partes, resolvemos.

## II

## A

La responsabilidad civil por malas prácticas de la medicina, como consecuencia de la impericia o negligencia de un facultativo, emana del Art. 1802 del Código Civil de Puerto Rico. *López v. Dr. Cañizares*, 163 DPR 119, 132 (2004)[19]. El Art. 1802 establece que "aquel que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA sec. 5141.

Así pues, para imponer responsabilidad civil a un médico por actos de impericia al amparo del referido estatuto, es necesaria la concurrencia de los siguientes requisitos: (1) la presencia de un daño físico o emocional en el demandante, (2) que haya surgido a raíz de un acto u omisión culposa o negligente del demandado, y (3) que exista un nexo causal entre el daño

---

[17] *Véase*, apéndice del recurso, a la pág. 50.

[18] *Íd.*, a la pág. 52.

[19] A pesar de que el Código Civil de Puerto Rico, Ed. 1930, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, hacemos referencia al mismo, pues le aplica a la controversia de autos, dado que los hechos se suscitaron durante la vigencia de este.

sufrido y dicho acto u omisión. *López v. Dr. Cañizares*, 163 DPR, a la pág. 132.

Por lo tanto, para prevalecer en su reclamo, la parte demandante deberá establecer "por preponderancia de la evidencia —creída por el juzgador— que el daño emergente fue causado por los actos de negligencia, falta de cuidado o impericia del médico". *Sáez v. Municipio de Ponce,* 84 DPR 535, 543 (1962).

Consecuentemente, "el deber de cuidado exigible consiste en la obligación de todo ser humano de anticipar el peligro de ocasionar daños cuya probabilidad es razonablemente previsible". *López v. Dr. Cañizares*, 163 DPR, a la pág. 132. No se requiere que el daño haya sido previsto de la manera exacta en que ocurrió. Es suficiente con que este sea una consecuencia natural y probable del acto u omisión negligente. *Tormos Arroyo v. D.I.P*, 140 DPR 265, 276 (1996).

En cuanto al deber de cuidado de los médicos, el Tribunal Supremo ha expresado que,

> [...] "éstos vienen en la obligación de brindar a sus pacientes aquella atención que, a la luz de los modernos medios de comunicación y enseñanza", y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, "satisface las exigencias profesionales generalmente reconocidas por la propia profesión médica".

*López v. Dr. Cañizares*, 163 DPR, a la pág. 133. (Notas al calce suprimidas).

Con relación al peso de la prueba en casos de impericia médica, este recae sobre el demandante, que deberá probar **mediante prueba pericial**, cuáles son las normas mínimas de conocimiento y cuidado médico. *Íd.* Una vez establecidas, el demandante también deberá probar que la parte demandada incumplió con las normas en el tratamiento del paciente y que ello causó el daño alegado. *Íd.*, a las págs. 133-134. Ello, pues "´[n]uestro ordenamiento obliga al médico a responder por los daños y perjuicios causados *tan sólo* cuanto actúa negligentemente, con descuido o falta de pericia profesional que exigen las circunstancias´". *Íd.*, a la pág. 134. (Énfasis en el original).

B

La Regla 23 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 23, dispone lo relacionado al descubrimiento de prueba. El descubrimiento de prueba persigue: "(1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar prueba". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 203 (2023).

Es harto conocido que el descubrimiento de prueba debe ser amplio y liberal. *Íd.*; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 496 (2022). No obstante, el foro primario goza de entera discreción para pautar las reglas que entienda necesarias para llevar a cabo el descubrimiento. *Íd.* Tal discreción no solo se limita a la etapa del descubrimiento de prueba, sino que se extiende a todos los procedimientos ulteriores. *Berrios Falcón v. Torres Merced*, 175 DPR 962, 971 (2009). Ello, pues es principio rector en nuestro ordenamiento que los casos se resuelvan de manera justa, rápida y económica. *Íd.*

Al ejercer su discreción de prolongar o acortar el término para realizar el descubrimiento de prueba, el tribunal deberá hacer un balance entre dos intereses de gran importancia para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema judicial. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846 (2023). De una parte, deberá garantizar la pronta solución de las controversias, y de otra, velar por que las partes tengan la oportunidad de llevar a cabo un amplio descubrimiento, de forma tal que en la vista no surjan sorpresas. *Íd.*

III

En el presente caso nos corresponde determinar si el tribunal *a quo* erró al no permitir la sustitución del perito de la parte apelante, luego de culminado el descubrimiento de prueba y a tan solo unas semanas de comenzar el juicio en su fondo. Tras un análisis del expediente y del tracto procesal del caso ante nuestra consideración, respondemos en la negativa. Veamos.

Del derecho consignado queda meridianamente claro que todo asunto relacionado al descubrimiento de prueba está subordinado a la entera discreción del foro primario[20]. Cónsono con ello, es norma reiterada que, de ordinario, los tribunales apelativos no debemos intervenir con la discreción del foro primario con respecto al manejo del caso, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Services Sta.*, 117 DPR 729, 745 (1986).

En el presente caso, estimamos que la actuación del tribunal primario descansó en el ejercicio de su sana discreción, dando especial consideración a las múltiples incidencias procesales acaecidas durante el trámite del caso.

En primer orden, surge con meridiana claridad que la solicitud de sustitución fue presentada en una etapa sumamente avanzada en el pleito. Sin ánimo de repetir, (1) el caso de marras dio inicio el 18 de julio de 2018; (2) el descubrimiento de prueba culminó el 13 de marzo de 2020; (3) el 2 de octubre de 2023, se llevó a cabo la conferencia con antelación a juicio; (4) en esa misma fecha, el tribunal pautó el juicio en su fondo del 15 al 22 de julio de 2024; y, (5) el 23 de junio de 2024, la parte apelante presentó su solicitud de sustitución de perito.

Nótese que la mencionada solicitud de sustitución no solo fue presentada mucho tiempo después de culminado el descubrimiento de prueba, sino que se presentó cuatro (4) años y tres (3) meses luego de culminado el descubrimiento de prueba; ocho (8) meses después de celebrada la conferencia con antelación a juicio; y apenas tres (3) semanas antes de que comenzara el juicio en su fondo. Indudablemente, se trata de una fase sumamente adelantada en el pleito.

En su recurso de apelación, la parte apelante hace referencia, de modo persuasivo, a un recurso atendido por un panel hermano de este Tribunal; *Villa Blanca LTD v. Mapfre Praico Insurance Company*,

---

[20] *Berrios Falcón v. Torres Merced*, 175 DPR, a la pág. 971.

KLCE202300351. Además, fundamenta gran parte de su escrito en la reciente opinión emitida por el Tribunal Supremo de Puerto Rico en el caso *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Desde luego, ambos casos encuentran similitud con el presente, en tanto las controversias versan sobre una solicitud de sustitución de perito. Ahora bien, existe una diferencia fundamental entre estos casos y el de marras: la etapa en la que se presentaron las solicitudes de sustitución. Tanto en el caso KLCE202300351, como en *Rivera et al. v. Arcos Dorados et al.*, los requerimientos para sustituir a sus respectivos peritos fueron presentados **antes de culminado el descubrimiento de prueba**.

Ello, ciertamente, dista mucho de lo ocurrido en el presente caso, en el que la parte apelante presentó su solicitud de sustitución del perito poco más de cuatro (4) años luego de concluido el descubrimiento de prueba, y a escasas tres (3) semanas antes de que diera comienzo el juicio en su fondo.

En segundo orden, precisa apuntar que, en su escueta moción, la parte apelante se limitó a argüir que el doctor Andújar sufría de varias condiciones de salud y que tenía un supuesto conflicto de interés con el HMM, lo que le impedía testificar en su contra. Sin embargo, el escrito en cuestión no estuvo acompañado de documento alguno que sustentara los planteamientos de la parte apelante[21]. Esto es, la parte apelante no acreditó justa causa para que el foro *a quo* permitiera la sustitución del perito.

Respecto a ello, valga apuntar además lo siguiente. Según consignado en el tracto procesal reseñado, tras la denegatoria de su petitorio, la parte apelante presentó una solicitud de reconsideración, en la que tampoco incluyó evidencia alguna en torno a ello. Por el contrario, esta requirió de un término adicional de quince (15) días para remitir una declaración jurada del doctor Andújar, junto a evidencia relacionada a su

---

[21] Señalamos que, en el caso KLCE202300351, al que hace referencia la parte apelante, la solicitud de sustitución de perito fue acompañada de una declaración jurada del perito, y un certificado médico emitido por un doctor.

condición médica[22]. Por si fuese poco, llegado el día del juicio, la parte apelante solicitó otro término de tres (3) días para presentar un certificado médico referente al doctor Andújar. Adviértase pues, que la parte apelante tuvo la oportunidad de presentar evidencia conducente a acreditar justa causa para la sustitución del perito, más nunca lo hizo; lo que, a nuestro juicio, denota una clara falta de diligencia en el asunto.

Lo hasta aquí discutido favorece plenamente la determinación emitida por el foro primario. La sustitución del doctor Andújar en una etapa tan adelantada en el pleito, y sin que se demostrara justa causa, conllevaría la reapertura de un descubrimiento de prueba que culminó hace más de cuatro (4) años, lo que sin duda resultaría en un perjuicio para la parte apelada. Recordemos, además, que en nuestro ordenamiento jurídico rige como eje principal la solución de los casos de manera justa, rápida y económica. *Berrios Falcón v. Torres Merced*, 175 DPR, a la pág. 971. A ello precisamente responde la sentencia recurrida.

En conclusión, y dado a las circunstancias excepcionales que presenta el caso, en el presente caso, razonamos correcta la determinación del foro primario de no permitir la sustitución del perito de la parte apelante. De igual forma, concluimos que, tras dicha determinación, no procedía más que la desestimación del pleito. En la medida en que la parte apelante tenía el peso de la prueba para establecer cuáles eran las normas mínimas que se debían implementar en el tratamiento ofrecido a la señora Morales[23], razonamos insostenible el que esta cumpliera con su carga probatoria sin el testimonio pericial del doctor Andújar.

Por último, apuntamos que, en su señalamiento de error, la parte apelante sostiene que el foro primario incidió al no permitir como alternativa el uso del perito del HMM como testigo hostil. No obstante, el recurso de apelación carece de fundamentos jurídicos que nos permitan considerar el

---

[22] En este punto, resulta menester subrayar que, si bien la parte apelante presentó una moción a la que adjuntó una declaración jurada del doctor Andújar, el Tribunal de Primera Instancia dio la misma por no presentada.

[23] Véase, *López v. Dr. Cañizares*, 163 DPR, a las págs. 133-134.

asunto. Más aún, el escrito en apelación no hace mención adicional alguna al respecto. De nuevo, la parte apelante se limita a hacer alusión al tema en su señalamiento de error, mas no presenta una discusión adecuada, fundamentada en hechos y derecho.

Sabido es que, como parte de los requisitos que debe satisfacer una parte para el perfeccionamiento de los recursos instados ante este Tribunal, esta debe incluir una discusión de los errores señalados, junto a las disposiciones de ley y la jurisprudencia aplicable. Regla 16(C)(1)(f) del Reglamento de este Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. El cumplimiento con estos requisitos es uno riguroso. Véase, *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).

Ante la ausencia absoluta de una discusión sustentada jurídicamente, a los efectos de utilizar al perito del HMM como testigo hostil, este tribunal no está en posición de justipreciar tal señalamiento.

IV

Por los fundamentos anteriormente expuestos, **confirmamos** la *Sentencia* emitida el 15 de julio de 2024, notificada el 17 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones