ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CARLOS MIRABAL PARGAS, AIDA MIRABAL DELGADO, sociedad legal de gananciales MIRABAL-DELGADO, e INSTITUTIONAL SETTLEMENTS GROUP, LLC,<br><br>Recurrida,<br><br>v.<br><br>FRANCISCO J. RIVERA FERNÁNDEZ; THE PHOENIX FUND,<br><br>Peticionaria. | KLCE202500598 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón.<br><br>Civil núm.: SJ2024CV08126<br><br>Sobre: incumplimiento de contrato y cobro de dinero. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de junio de 2025.

El señor Francisco J. Rivera Fernández (señor Rivera) instó el presente recurso de *certiorari* el 2 de junio de 2025. En él, nos solicita la revisión de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 4 de abril de 2025. Mediante esta, el foro primario declaró sin lugar la moción de desestimación presentada por la parte peticionaria el 6 de diciembre de 2024.

Examinada la petición de *certiorari*, así como la oposición al auto presentada por la parte recurrida del título, **denegamos** la expedición del auto.

I

El 3 de septiembre de 2024, los señores Carlos Mirabal Pargas, Aida Mirabal Pargas y la sociedad legal de bienes gananciales compuesta por ambos, e Institutional Settlements Group, LLC (ISG, y, en conjunto, la parte recurrida), presentaron una demanda[1] por incumplimiento de contrato en

---

[1] *Véase*, apéndice del recurso, a las págs. 1-7.

Número identificador

RES2025_____

contra del señor Rivera y The Phoenix Fund[2]. En ella, adujeron que, el 30 de marzo de 2022, ISG, representada por el señor Mirabal, suscribió un *Business Agreement* con el señor Rivera en su carácter personal y como representante de The Phoenix Fund. Señalaron que, como parte de los acuerdos pactados, el señor Mirabal le proveería información confidencial al señor Rivera sobre la venta de pagos de anualidades estructuradas (*structured settlement annuity*). Indicaron que, a cambio de ello, el señor Rivera se había obligado a, entre otros: (i) crear una entidad con propósito especial, para recaudar el capital necesario para financiar el negocio; (ii) entregar el cuarenta por ciento (40%) de los ingresos brutos de la entidad con propósito especial al señor Mirabal; (iii) realizar un pago mensual de veinte mil dólares ($20,000.00) al señor Mirabal por un periodo de seis (6) meses, para un total de ciento veinte mil dórales ($120,000.00); y, (iv) emitir un pago a favor del señor Mirabal por un monto de entre doscientos cincuenta mil dólares ($250,000.00) y cuatrocientos mil dólares ($400,000.00), ajustado al saldo pendiente de una deuda hipotecaria que este mantenía.

No obstante, la parte recurrida sostuvo que el señor Rivera había incumplido con el acuerdo, limitándose a realizar un único pago de doscientos cincuenta mil dólares ($250,000.00), y obviando los pagos mensuales y el porcentaje de ganancias pactados. A esos efectos, esta reclamó el pago del cuarenta por ciento (40%) de los ingresos devengados por la entidad con propósito especial, los pagos estipulados en el contrato, y una partida por daños y perjuicios, entre otros.

Así las cosas, el 6 de diciembre de 2024, el señor Rivera compareció por primera vez en el pleito mediante una moción de desestimación[3]. A través de esta, indicó que la parte recurrida carecía de una causa de acción en su contra. Precisó que, previo al *Business Agreement*, las partes habían

---

[2] La causa de acción contra The Phoenix Fund fue desestimada por el foro recurrido mediante sentencia parcial dictada el 2 de abril de 2024, notificada el 4 de abril del mismo año. *Véase*, apéndice del recurso, a las págs. 119-125.

[3] *Véase*, apéndice del recurso, a las págs. 8-29.

suscrito un documento intitulado *Settlement and General Release Agreement* (*General Release*), mediante el cual el señor Mirabal había renunciado a cualquier reclamación pasada, presente o futura en su contra y en contra de sus compañías, Pariter Wealth Management Group, LLC, Pariter Risk Management, Inc., Pariter Securities, LLC (en conjunto, Pariter). En detalle, adujo que el *General Release* contenía una cláusula que lee como sigue:

> 2. **Agreement Not to Sue**: MIRABAL agrees that he will never file or accept anything of value from a lawsuit concerning any claim, issue, or matter relating to or arising out of his relationship with the Company, or the compensation or benefits payable in connection with his business relationship with the Company. MIRABAL further agrees that he will not file or institute any complaint or change against the Company with any local, state or federal agency. The Company, for those known matters included herein, waives its right to pursue any legal or administrative procedures against MIRABAL, provided however, should MIRABAL violate any aspect of this Agreement, the Company will then pursue any legal and administrative remedy, included, but not limited to, the rights mentioned in Section 6, and MIRABAL agrees: to pay costs, expenses, and damages incurred by and to the Company in responding to or as a result of any breach to this Agreement, including, without limitation, reasonable attorneys' fees; and provided, however, that if MIRABAL violates this Agreement by suing the Company for any claim or if he violates it in any other respect, the Company shall be relieved of its obligations to him under this Agreement and will have the option to pursue a complete legal and administrative procedures. For those unknown matters or related known matters not included herein, the Company will not waive its right and will pursue any legal and administrative remedies without any notification in the eventual breach of any of MIRABAL's obligation herein agreed.

(Énfasis en el original)[4].

Adicionalmente, indicó que el *General Release* había sido suscrito como requisito previo para dar inicio a conversaciones encaminadas a la celebración del nuevo negocio, y así había sido reconocido en el *Business Agreement*. Sobre ello, precisó que este último disponía lo siguiente:

> WHEREAS, MIRABAL and FJR have agreed to voluntarily memorialize and settle **all previous business relationships and have executed a General Release and Settlement Agreement to that effect under a separate document**, hereinafter ("Release Agreement"), **in consideration to enter into this new Business Opportunity**.

---

[4] *Véase*, apéndice del recurso, a la pág. 20.

(Énfasis nuestro).

El señor Rivera indicó que ambos documentos debían interpretarse de manera conjunta.

El 24 de enero de 2025, la parte recurrida se opuso[5]. En su escrito, adujo que el *Business Agreement* no estaba cubierto por las disposiciones del *General Release*. Detalló que el primero establecía con claridad la aplicación exclusiva del *General Release* a las relaciones comerciales previas entre el señor Rivera y el señor Mirabal. Es decir, que el *General Release* no guardaba relación con el negocio pactado mediante el *Business Agreement*.

El 18 de febrero de 2025, el señor Rivera replicó al escrito en oposición[6]. A grandes rasgos, insistió en que el *General Release* formaba parte del *Business Agreement*. Añadió que el Artículo IV de este último, en su sección 4.1[7], también reconocía al *General Release* como un requisito previo para concretar el *Business Agreement*.

Atendidos los escritos de las partes, el 4 de abril de 2025, el Tribunal de Primera Instancia declaró sin lugar la moción dispositiva[8]. El foro *a quo* razonó que el *Business Agreement* disponía claramente que el *General Release* únicamente aplicaba a las relaciones comerciales anteriores entre el señor Mirabal y el señor Rivera. Así, concluyó que el *General Release* no se había extendido a las disposiciones del *Business Agreement*.

Adicionalmente, razonó que la cláusula de relevo citada en el *General Release* hacía referencia a reclamaciones relacionadas con, o derivadas de, la relación entre el señor Mirabal, Pariter y el señor Rivera.

---

[5] *Véase*, apéndice del recurso, a las págs. 86-91.

[6] *Íd.*, a las págs. 92-110.

[7] La sección 4.1 del Artículo IV del *Business Agreement* dispone como sigue: "Section 4.1 <u>General Release and Settlement.</u> The Parties acknowledge and agree to execute in a separate document the corresponding Agreement and it will be considered part of this Agreement." *Véase*, apéndice del recurso, a la pág. 27.

[8] *Véase*, apéndice del recurso, a las págs. 126-130.

En desacuerdo, el 22 de abril de 2025, la parte peticionaria solicitó la reconsideración[9]. En esta, reprodujo los mismos argumentos esbozados en su moción dispositiva. Luego, el 27 de abril de 2025, la parte recurrida instó su oposición a la reconsideración[10] y reiteró sus planteamientos.

El 1 de mayo de 2025, notificada al próximo día, el foro primario denegó la solicitud de reconsideración[11].

Inconforme, el señor Rivera incoó este recurso de *certiorari* el 2 de junio de 2025, y planteó el siguiente error:

> Erró el TPI al declarar "No ha lugar" la moción en solicitud de reconsideración presentada por el Sr. Francisco J. Rivera Fernández.

(Énfasis omitido).

El 12 de junio de 2025, la parte recurrida presentó su oposición a la expedición del recurso.

Evaluados los argumentos de las partes litigantes, resolvemos.

II

A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

---

[9] *Véase*, apéndice del recurso, a las págs. 131-146.

[10] *Íd.*, a las págs. 147-149.

[11] *Íd.*, a la pág. 150.

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986).

III

En su recurso de *certiorari*, el señor Rivera sostiene que el Tribunal de Primera Instancia incidió al declarar sin lugar su moción de desestimación. Insiste en que el señor Mirabal renunció a cualquier reclamación en su contra, en su carácter personal, y en contra de Pariter. Además, reitera que el *General Release* fue un requisito previo para llevar a cabo el nuevo negocio y forma parte del *Business Agreement*.

Por otro lado, en su escrito en oposición, la parte recurrida recalca que el *General Release* aplica exclusivamente a las relaciones comerciales anteriores entre el señor Mirabal y el señor Rivera.

Analizados los sendos escritos de las partes, así como la determinación recurrida, no podemos concluir que el foro primario hubiera incurrido en un abuso de discreción o que hubiera actuado con prejuicio o parcialidad, o que se hubiera equivocado en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo que conlleve un fracaso de la justicia. Además, la parte peticionaria del título no pudo demostrar que, intervenir en esta etapa, evitaría un perjuicio sustancial.

Así pues, no se justifica nuestra intervención en esta etapa de los procedimientos.

IV

Conforme a lo antes expuesto, este Tribunal **deniega** la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones